76   475
177s 298

## George F. Harding v. Andrew Olson.

1.  CONTRACTS—*Must be Mutual.*—A contract between parties *sui juris* must be mutual.  If either party is bound both will be bound.

2.  SAME—*Rights of Party Filing a Bill to Rescind.*—If a party entitled to rescind a contract, files a bill for that purpose, his right to avoid the contract is fixed and can not be affected or defeated by any action of the other party thereafter.

3.  TENDER—*Under Agreement for a Warranty Deed.*—The tender of a deed of conveyance after the filing of a bill to rescind a contract for the sale of real estate is too late and can not operate as a revival of the contract or affect the vendee's rights in the premises.

4.  SAME—*Of an Unrecorded Contract.*—In a suit to rescind a contract for the sale of real estate, if the contract has not been recorded, a tender of it to the defendant before bringing the suit is unnecessary.

5.  EQUITY PRACTICE—*Objection that There is a Remedy at Law.*—If a defendant submits to the jurisdiction of the court and answers the bill it is too late for him to object that the complainant has an adequate remedy at law.  Such an objection must be made at the earliest opportunity.

6.  SAME—*Cross-Bill—How Regarded.*—As between the parties to a suit in chancery a cross-bill is to be regarded as an adjunct—or part of the original suit—and the whole together as constituting but one case.

7.  PARTIES—*In Chancery.*—When a person is a mere naked, legal trustee, and has no substantial or beneficial interest in the premises, and no relief is sought against him, such person is not a necessary party to a proceeding in chancery to rescind a contract for the sale of real estate.

**Bill to Cancel a Contract.**—Trial in the Circuit Court of Cook County; the Hon. JOHN GIBBONS, Judge, presiding. Hearing and decree for complainant. Appeal by defendant. Heard in this court at the March term, 1898. Affirmed. Opinion filed May 26, 1898.

WM. J. AMMEN, attorney for appellant.

Jos. D. HUBBARD, attorney for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a decree in favor of appellee and against appellant, on a bill filed December 3, 1895, praying the cancellation of a contract for the sale by appellant to appellee of certain premises and a return from appellant to appellee of the amount of the money paid in pursuance of the contract.

The bill alleges, in substance, that January 3, 1890, a contract in writing was executed by the parties for the sale by appellant to appellee of lots 5 and 6 in block 2, in Junction Grove subdivision of the south 27 acres of the W. ½ of the N. W. ¼ of section 22, township 35 north, range 14 east of the third principal meridian, in Cook county, Illinois, for $1,000; that appellee paid $125 at the date of the contract, $75 February 24, 1890, and, by the contract, appellee agreed to pay the remainder, $800, on or before January 3, 1896, in such sums and at such times as he might elect, with interest at the rate of six per cent per annum, payable semi-annually, and that if appellee failed to pay such remainder on or before January 3, 1896, appellant might, at his option, declare the contract forfeited and retain, as liquidated damages, all payments made; that it was further agreed that, after two years from date of the contract, and the payment in full of principal and interest, appellee should be entitled to a warranty deed of said premises free and clear of all incumbrances; that on October 1, 1895, appellee had paid to appellant all that was due on the contract, except the sum of $383.58, and that appellee also, in pursuance of the contract, paid taxes and assessments on the premises to the amount of $190.78.

It is further alleged in the bill, that August 2, 1895, appellee, by his attorney, notified appellant that he, appellee, was ready to pay appellant $376.74, the balance then due on the contract, and requested appellant to execute to him a conveyance of the premises described in the contract as therein provided, and offered to allow appellant a reasonable time in which to clear the title; that appellee caused the title to be examined, and it was discovered that, at the time of the execution of the contract, appellant had no title to the premises, although appellee believes that he was the equitable owner thereof, the naked legal title being in George F. Harding, Jr., who held such title as trustee for appellant; that July 16, 1890, George F. Harding, Jr., conveyed the premises in fee simple to the Firemen's Insurance Company, which company is the owner of same; that George F. Harding represented himself to be the owner, and appellee, relying on said representation, and believing that appellant would convey the premises to him on payment and demand, omitted to file the contract for record, but appellee avers, believes and charges that the Firemen's Insurance Company took title to the premises with full knowledge of appellee's contract and his rights thereunder.   The bill then alleges that judgments have been rendered against the Firemen's Insurance Company in favor of the following named persons, and for the amounts, at the dates, and by the courts mentioned :

Augusta Barnsch, December 22, 1894, Circuit Court, Cook County, $1,665.

Appleton Paper and Pulp Company, February 16, 1893, Circuit Court, $2,182.50.

Appleton Paper and Pulp Company, July 5, 1895, Appellate Court, First District; on appeal from judgment in last mentioned case, judgment affirmed, and that said judgments are liens on said premises.

That, October 21, 1895, appellee tendered to both appellant and the Firemen's Insurance Company the sum of $383.58, being the balance then due on the contract, notified them that said judgments were liens on the premises, de-

manded that the judgments should be satisfied or the premises released therefrom, demanded a warranty deed of the premises, and offered to allow appellant and the insurance company five days in which to procure a good title, all of which they have failed and refused to do.

The bill, after alleging a fear that appellant may declare a forfeiture of the contract, makes appellant and the Firemen's Insurance Company defendants, prays for an accounting as to moneys paid by appellee, a cancellation and delivery up of the contract, and a decree that appellant repay to appellee all sums paid by him on account of the contract.

Appellant and the Firemen's Insurance Company filed a joint and several answer to the bill January 4, 1896. The answer admits the contract as alleged in the bill, and that October 21, 1895, appellee had paid appellant Harding all of the consideration for the contract, except in the neighborhood of $383.58; also that, some time in August, 1895, appellee stated to appellant, Harding, that he was ready to pay the balance due, and desired said Harding to execute and deliver to him a conveyance of the premises free and clear of all incumbrances; also that, at the date of the contract, the title to the premises was in George F. Harding, Jr., but that he held merely the naked legal title, and appellant was the real and equitable owner. The answer also admits that the judgments mentioned in the bill are apparent liens on the premises in question.

The answer disclaims knowledge of the amount paid by appellee for taxes and assessments and also of the amount due on the contract in August, 1895, when appellee notified appellant, Harding, that he was ready to pay the balance due on the contract, and demanded a deed.

The answer avers that, December 21, 1892, the Firemen's Insurance Company conveyed the premises in fee simple to the Chicago Real Estate Loan and Trust Company by a deed which has been lost or mislaid, and was never recorded, but that each of said companies took the title on condition that whenever appellee should comply fully with his contract, it would convey the premises to

him or to appellant, Harding, so that he could convey to appellee; that appellant is the president of both said companies. The answer further avers that all of the suits mentioned in the bill are pending in the Supreme Court on appeal from the Appellate Court; that they were appealed to the October term, 1896, of the former court; that decisions are shortly expected; that if the judgments should be affirmed, they would be promptly paid, etc., and that appellant was unable to comply with the contract until said suits should be finally determined. The answer further avers that the Chicago Real Estate Loan and Trust Company has filed a bill in the Circuit Court of Cook County to have the apparent lien of said judgments removed, and that the defendants to appellee's bill expected to obtain a decree removing such leins within the next ten days. The answer denies any intention on the part of appellant, Harding, to declare the contract forfeited.

On January 14, 1897, after the master's report was filed, it was stipulated between the parties that appellee might file *instanter* an amended bill, and that the defendants might, within four days from that date, file an answer to the amended bill, and also an amended cross-bill, and that a demurrer to the cross-bill theretofore filed should stand as a demurrer to the amended cross-bill.

In pursuance to this stipulation, appellee, January 14, 1897, filed an amended bill, which it is unnecessary to refer to, as, in our opinion, the amendments did not materially change the aspect of the case.

The appellant and the Firemen's Insurance Company filed an amended cross-bill January 18, 1897, but filed no answer to the amended bill, nor is it prayed in the amended cross-bill that it may be taken or considered as an answer to the amended bill. The master, in his report, filed January 11, 1897, found that appellee had paid of the purchase price of the premises, and for taxes and special assessments which, by the contract, he was required to pay, divers sums at divers times, which, with interest thereon, amounted to $1,278.57, and that appellee was entitled to a decree as prayed by his bill.

Exceptions were filed to the report by appellant and the Firemen's Insurance Company, which the court overruled and rendered a decree in accordance with the bill, and at the same time sustained the demurrer to the amended cross-bill, and, appellant electing to abide by the cross-bill, dismissed the cross-bill. The foregoing analysis of the bill and answer show that all the material allegations of the bill were admitted by the answer except the amount paid by appellee for taxes and assessments, which amount was fully proved before the master.

Appellant's counsel says, in his argument, " the contract in this case did not make time of performance of Mr. Harding, of the essence of the contract; it was only time of payment on the part of Olson that was made of the essence of the contract." If it is intended by this statement to convey the idea that, while appellant might insist on strict performance by appellee, in accordance with the letter of the contract, appellee had no right on fully performing or tendering performance of his part of the contract, to demand a deed, we think the proposition clearly untenable. The contract was mutual and expressly provides, " It is understood that after two years from the date hereof, and upon payment in full of principal and interest, said second party shall be entitled to a deed."

" It is a rule of general application in the law of contracts, that a contract between parties *sui juris* must be mutual —that is, if either is bound both will be bound." Weaver et al. v. Weaver, 109 Ill. 225, 232; Vogel v. Pekoc, 157 Ib. 339, 342.

It is further contended that appellee had no right to refuse to accept the title on account of the judgments against the insurance company; that the company took the title with notice of the contract, and was bound to convey; that appellant and the company were ready to convey; and that the judgments were not real, but only apparent liens, etc.

Appellant, in his answer to appellee's bill, after referring to the judgments in question, and the appeals from them,

says that he "is utterly unable to comply with said contract until said suits shall have been fully determined in the Supreme Court," etc., thus treating the judgments as liens necessary to be removed before he could comply with his contract, and it further appears from the answer and the evidence, that the Chicago Real Estate Loan and Trust Company, whose president appellant was, and which company appears to have acted merely as his agent and trustee, had filed a bill in the Circuit Court, by appellant's direction, not only for the removal of the apparent liens of the judgments in question from the premises in question, but from other premises owned by that company.

In appellant's testimony he says: "I have also caused to be filed a bill against judgment creditors to remove the incumbrance on the title." Again, "we told Mr. Hubbard and Mr. Olson—Mr. Olson more than once—we were ready to make the conveyance of the title and wanted a little delay so as to be sure to get these liens out of the way."

We think there can be no question that the judgments constituted liens apparent of record which, while they remained, decreased the market value of the property and rendered it less salable, and that appellee was not bound to accept a conveyance of the premises during the existence of such liens.

It is not alleged in the answer, and it does not appear from the evidence, that any deed or conveyance was tendered to appellee until December 11, 1896, more than eleven months after the contract had expired by limitation, and while evidence was being taken before the master, when appellant's counsel tendered two warranty deeds of the premises, one from appellant and wife and one from the Chicago Real Estate Loan and Trust Company. This tender was too late. The filing of the bill by appellee was a rescission of the contract, and appellant's offer of the deed of conveyance could not operate to revive the contract, or affect appellee's rights in the premises. Thomas v. Coultas, 76 Ill. 493, 498.

It is assigned as error, and appears to be relied on in

appellant's argument, that the court found that all money paid by appellee on the contract was paid to appellant. It is admitted on the first page of appellant's answer that " on October 21, 1895, said Olson had paid the said Harding on said contract all of said consideration, except in the neighborhood of $383.58," and appellant's counsel, in his argument, says :

" Olson made payments from time to time on such contract, in such amounts, that on October 21, 1895, the balance remaining unpaid was the sum of $383.58, as alleged in the bill, admitted in the answers, and as shown by the proof. In addition he paid the taxes and assessments from time to time on the property. All these payments are stated in the master's report of findings and conclusions. There was no dispute in the Circuit Court, and there is none here, as to the amount of payments and the amount remaining unpaid."

Exclusive of these admissions and considering only the proof, we are of opinion that the court would have been fully justified in finding that the money paid on the contract price was paid to appellant.

Appellant's counsel urges that there was proof of occupancy of the premises in question, which operated as notice to the judgment creditors in the judgments in question of the state of the title. Perhaps, if this were true, it might be relevant on a bill filed against the judgment creditors to remove the cloud of their judgments, but we are at a loss to perceive how it can be relevant in the present case. Were it relevant, we would find no difficulty in agreeing with the finding of the master, that there was no occupancy proved sufficient to charge the creditors with knowledge of the title.

Appellant's counsel further objects that appellant was not allowed a reasonable time in which to perfect the title. We think this proposition contrary to the evidence. When the contract was executed January 3, 1890, appellant knew that, at any time after January 3, 1892, appellee would have the right, under the contract, to pay the balance of

the consideration unpaid and demand a deed. It is expressly admitted in appellant's answer to the original bill, that in August, 1895, Olson stated to appellant that he was ready to pay the balance due and desired appellant to execute and deliver to him a conveyance of the premises free and clear of all incumbrance.

October 21, 1895, appellee made a tender of the balance then due, and demanded a conveyance in accordance with the contract, within five days from that date. After making the demand, appellee waited till December 3, 1895, before filing his bill. From August 2, 1895, when the first demand was made, till December 3, 1895, when the bill was filed, was four months, and from October 21, 1895, to December 3, 1895, was forty-two days. We do not think it necessary to cite authorities in support of the proposition that a reasonable time to perfect the title was allowed to appellant. The fact that appellant's insurance company, whose business he says he controlled, was engaged in contesting just claims, is certainly not a sufficient excuse for non-compliance with his contract with appellee.

It is further contended that appellant's objection to the jurisdiction of the court should have been sustained.

Appellant's answer to the original bill contains no objection to the jurisdiction, and does not set up what is now urged in argument—that appellee had a remedy at law. The original bill and the answer thereto were referred to the master to take proofs and report, without objection by appellant. Appellant appeared before the master in person and by attorney, cross-examined appellee's witnesses and introduced evidence in his own behalf, and never made the objection that appellee's remedy was at law, until January 14, 1897, when he raised the objection by his cross-bill, then filed.

In Stout v. Cook, 41 Ill. 447, cited with approval in Magee v. Magee, 51 Id. 500, the court say: "The objection that, in the case before the court, there was a complete remedy at law, comes too late after having filed an answer without taking the exception." The court then proceeds

to quote with approval the following from Daniell's Chancery Practice : " If a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff has an adequate remedy at law. This objection should be taken at the earliest opportunity," etc. See, also, Gage v. Griffin, 103 Ill. 41, 44; Crawford v. Schmitz, 139 Ib. 564, 571; Clemmer v. Drovers' Nat. Bank, 157 Ib. 206, 217, 218; Kaufman v. Wiener, 169 Ib. 596, 600–1.

Appellant not only submitted to the jurisdiction of the court as heretofore stated, but by his cross-bill filed April 1, 1896, and his amended cross-bill filed January 14, 1897, himself sought equitable relief, namely, specific performance by appellee of the contract. Appellee's contract not having been recorded, a tender of the contract to appellant before bringing suit was unnecessary. In Eames v. Der Germania Turn Verein, 8 Ill. App. 663, cited by counsel, the contract had been recorded.

It is urged that the Chicago Real Estate Loan and Trust Company was a necessary party to the suit. It appears from the evidence that that company has no substantial or beneficial interest in the premises, and no relief is sought against it by the bill, nor is any granted by the decree. It is a mere naked legal trustee, and appellee, by his bill, does not seek to interfere in any way with the legal title. He merely seeks cancellation of the contract and a return of the money paid by him to appellant in pursuance of the contract. Under these circumstances we do not consider the Chicago Real Estate Loan and Trust Company a necessary party.

The amended cross-bill was filed, as before stated, after the proofs were all taken, and the court sustained a demurrer to it, and appellant, on the hearing, electing to stand by the cross-bill, the court dismissed it. This is assigned as error. A cross-bill between parties to the suit "is to be regarded as an adjunct or part of the original suit, and the whole together as constituting but one case." Fleece v. Russell et al., 13 Ill. 31.

This being true, the court, in passing on the sufficiency of the cross-bill, could properly consider it in connection with the other pleadings in the case. Having carefully read and considered the cross-bill, we are of opinion that it alleges no facts which, if proved, would constitute a valid defense to the bill or entitle appellant to any affirmative relief. This being the case, the demurrer was properly sustained (Wing et al. v. Goodman, 75 Ill. 159; Hook v. Richeson et al., 115 Id. 431, 443); and as appellant did not ask leave to amend the cross-bill, but elected to stand by it, the court could not do otherwise than dismiss it. Knapp v. Marshall, 26 Ill. 63. The decree will be affirmed.