## SAGE LAND & IMPROVEMENT CO. v. RIPLEY.

(Circuit Court of Appeals, Sixth Circuit. January 3, 1912.)

No. 2,166.

1. **EQUITY** (§ 237*)—BILL—DEMURRER AND ANSWER.

Where a demurrer and answer were filed to a bill at the same time, and, while each did not involve the whole bill, each did involve and overlap the same portions of the bill, the answer operated as a waiver of the demurrer.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 492; Dec. Dig. § 237.*]

2. **TRUSTS** (§ 371*)—TRUSTEES—ENFORCEMENT—BILL—DEMURRER—PARTIES.

Where, in a suit to enforce a trust as against the grantee of the original trustee, the bill did not show that any legal representative had ever been appointed for the latter, it was not demurrable because such legal representative was an indispensable party.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 588–599; Dec. Dig. § 371.*]

3. **EXECUTORS AND ADMINISTRATORS** (§ 439*)—ENFORCEMENT OF TRUST—PARTIES.

Where a trustee, with the consent of the cestui que trust, conveyed the trust property to defendant subject to the trust, the original trustee's administrator was not a necessary party to a subsequent suit by the cestui que trust against defendant to enforce the same.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 1786; Dec. Dig. § 439.*]

4. **TRUSTS** (§ 371*)—ENFORCEMENT—WRITING—BILL.

A bill to enforce an express trust required to be created in writing was not demurrable because there was nothing in the bill to indicate that it was created by a written instrument, where there was also nothing in the bill to indicate that it was not.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 588–599; Dec. Dig. § 371.*]

5. **TRUSTS** (§ 371*)—ENFORCEMENT—BILL—WRITTEN INSTRUMENT.

An allegation, in a bill to enforce a trust, that it was created by letters passing between complainant and decedent S., sufficiently alleged that it was created in writing.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 588–599; Dec. Dig. § 371.*]

6. **WITNESSES** (§ 166*)—TRANSACTION WITH PERSON SINCE DECEASED—PARTNERS.

S. purchased certain land, a part of which he held in trust for complainant, holding the title for the benefit of a partnership of which he and his two sons were members. Thereafter S., with plaintiff's consent, conveyed all the property to defendant corporation to enforce the trust; all of the stockholders except one having been members of the partnership. *Held,* that complainant's evidence as to the contents of a letter written by him to S., in answer to which the letter stating the terms of the trust was written, was not subject to exclusion under Pub. Acts Mich. 1903, No. 30, § 101, providing that, when any suit or proceeding is prosecuted or defended by any surviving partner or partners, the opposite party, if examined as a witness in his own behalf, shall not testify in relation to matters which, if true, must have been equally within the knowledge of the deceased partner, and not within the knowledge of any one of the surviving partners, and when any suit or proceeding is prosecuted or defended by any corporation, the opposite party, if examined as a witness in his own behalf, shall not be admitted to

testify at all to matters which, if true, must have been equally within the knowledge of a deceased officer or agent of the corporation, and not within the knowledge of any surviving officer or agent of the corporation.

[Ed. Note.—For other cases, see Witnesses, Dec. Dig. § 166.*]

7. TRUSTS (§ 35*)—CREATING INSTRUMENT—CONSTRUCTION.

Complainant, a land looker and timber estimator, having selected certain lands for S. & Co., S. offered to enter 20,000 acres and pay for them, 16,000 for S. & Co., and 4,000 for complainant, all to be entered in the name of S. & Co., and to be carried by them, they to pay the taxes for complainant, charging him the taxes annually and annual interest at 7 per cent. for five years, and, when complainant had a chance to sell, S. & Co. would take payment and execute the deed before the expiration of five years or would deed the whole on receiving payment. Held, that the 4,000 acres was the consideration for complainant's labor, skill, and knowledge in making advantageous locations, and that such amount was held in trust for him; he being entitled to whatever the 4,000 acres sold for, less the taxes and other expenses that S. & Co. had advanced for him, on that account, with interest.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 45–50; Dec. Dig. § 35.*]

8. TRUSTS (§ 203*)—CONVEYANCE TO TRUSTEE WITH NOTICE.

S., as a member of the firm of S. & Co., took title to certain land for the benefit of the firm, a part of which he held in trust for complainant, and thereafter conveyed all the land to defendant corporation, all the stockholders of which consisted of the former members of the partnership and a grandson of S., and was organized to take over the property and hold it in the stead of S. Held, that the corporation succeeded to the duties and obligations of S. as trustee for the part of the land belonging to complainant.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 273–276; Dec. Dig. § 203.*]

9. INTEREST (§ 60*)—COMPOUND INTEREST—RIGHTS OF TRUSTEE.

Complainant having selected a large quantity of land to be purchased by S. & Co., S. agreed to purchase 4,000 acres of the land for complainant and carry the same, paying taxes thereon for complainant, charging him with the taxes annually and annual interest at 7 per cent. for five years, agreeing to take pay and deed the land when complainant had a chance to sell before the expiration of five years. Held, that a corporation succeeding to the rights of S. was not entitled to charge complainant interest compounded annually on the amount originally paid for the land, but under the Michigan rule was only entitled to charge interest on the money advanced to carry the lands.

[Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 134–137; Dec. Dig. § 60.*]

Appeal from the Circuit Court of the United States for the Western District of Michigan.

Action by Lucien V. Ripley against the Sage Land & Improvement Company. Judgment for plaintiff, and defendant appeals. Affirmed.

De Vere Hall (Benton Hanchett, of counsel), for appellant.

W. S. Humphrey (Sharpe & Handy and Humphrey & Grant, on the brief), for appellee.

Before WARRINGTON, Circuit Judge, and McCALL and SANFORD, District Judges.

McCALL, District Judge. This case is here upon an appeal from the United States Circuit Court for the Western District of Michigan. The bill was filed by Lucien V. Ripley, appellee (hereinafter referred to as the complainant), against the Sage Land & Improvement Company, appellant (hereinafter referred to as the defendant). The complainant is a citizen of the state of Michigan, and the defendant is a corporation and a citizen of the state of New York. A demurrer was interposed to the bill, which was by the Circuit Court overruled. An answer was filed by the defendant. After proof was taken, the case was heard, resulting in a decree for the complainant. The defendant appealed, and assigns errors.

[1] We shall first dispose of the questions raised' on the demurrer. The demurrer and answer were filed at the same time; and, if in their scope and effect each does not involve the whole bill, still each so far involves and overlaps the same portions of the bill as to amount to a waiver and overruling of the demurrer by the answer in spite of the disclaimer made in respect of the latter. The rule of decision in this behalf is too familiar to justify stating in detail the reasons why we think the various decisions cited by the learned counsel for defendant are distinguishable from the present case. Some of the decisions stating the general rule, which we regard as applicable here, are Droste v. Hall (N. J. Ch.) 29 Atl. 437; Adams v. Howard (C. C.) 9 Fed. 347. per Blatchford while Circuit Judge; Strang v. Richmond, P. & C. R. Co. (C. C. A. 4th Cir.) 101 Fed. 511, 514, 41 C. C. A. 474; Bryant Bros. Co. v. Robinson (C. C. A. 5th Cir.) 149 Fed. 321, 329, 79 C. C. A. 259; Crescent City, etc., Co. v. Butchers', etc., Co. (C. C.) 12 Fed. 225; McDermott v. Blois, 1 R. M. Charlt. (Ga.) 281.

[2, 3] Moreover, the contention that the legal representative of the deceased Sage is an indispensable party is answered by the facts: (1) That the bill does not show that any such legal representative was ever appointed, and so does not in that respect present a question for demurrer; and (2) the bill discloses facts showing that the deceased Sage was originally invested with the title to the land in dispute in trust for himself and Ripley, and that subsequently the land was conveyed by Sage at his instance and with the consent of Ripley, to the appellant, subject to the trust and to the rights and liabilities of the parties interested in the land, under circumstances fairly charging appellant with the assumption of all liabilities growing out of the trust, and substituting the appellant in the place and stead of Sage in his relation with Ripley regarding the lands. It follows, we think, that no one representing the deceased Sage or in any wise liable for his acts, other than appellant, is an indispensable or even a proper party defendant touching any object of the present suit; for the case thus presented by the pleadings places the deceased Sage in the same relation to the trust property as that which he would have occupied had he possessed no interest in the land except that of a naked trustee, and surely this result of averments is not open to demurrer. McBride v. McIntyre, 91 Mich. 406, 408, 409, 51 N. W. 1113; Ryan v. O'Connor, 41 Ohio St. 368, 372; Northern Pac. R. Co. v. Kindred (C. C.) 14 Fed. 77, 81; Laidly v. Huntington, 121 U. S. 179, 181, 7

Sup. Ct. 855, 30 L. Ed. 883; Harding v. Olson, 76 Ill. App. 475, affirmed 177 Ill. 298, 52 N. E. 482.

[4] Regarding the claim that the court below was bound sua sponte at a later stage of the cause to take notice of the absence of the indispensable party mentioned, it is enough to say, as will more fully appear later, that the evidence reveals the fact that, although the deceased Sage was originally invested with the legal title to the land, yet, from that time to the time of his conveyance of the trust property to appellant, he acted for and in the interest of a copartnership composed of himself and his sons and conducted under the name of H. W. Sage & Co.; and that, when he sought and secured the consent of Ripley to convey the trust property to appellant, he did so in the interest and for the benefit of the copartnership. Apart from the effect of the answer upon the demurrer, and considering the claim that under statutes of the state of Michigan there was need of averment that the trust in question was created in writing, the fact that there is nothing in the bill to indicate that it was not so created ought alone to be a sufficient answer. Lamb v. Starr, Deady, 350, 14 Fed. Cas. 1024; Green v. Wagon Road Co. (C. C.) 23 Fed. 67, 70.

[5] But it is averred that the trust was created by letters passing between the deceased Sage and Ripley, and this is enough. Loring v. Palmer, 118 U. S. 321, 6 Sup. Ct. 1073, 30 L. Ed. 211; Renz v. Stoll, 94 Mich. 377, 54 N. W. 276, 34 Am. St. Rep. 358. Without discussing the subject of the demurrer further, we hold that it was properly overruled.

[6] The character of the decree to be entered in this case turns upon the proper construction of a letter, which comprises the contract between the parties, and is as follows:

"Ithaca, Dec. 7, 1880.

"L. V. Ripley, Superior, Wisconsin: We have yours, 29th ult. from Chicago—and 3d inst. from Superior—with regard to the farming and hardwood lands—if it would suit you we will enter 20,000 acres—and pay for them—i. e., 16,000 for ourselves and 4,000 for you—all to be entered in our name and we will carry them and pay the taxes for you—charging you the taxes annually and annual interest at 7 per cent. for five years—after the lands are purchased we will draw lots for division—and those drawn by you shall be known as yours & when you have chance to sell we will take pay and deed before the expiration of five years—and will deed the whole on receiving paymt. It is an objection to these lands that they are so near together—but they may be valuable nevertheless—If this suggestion is worth your attention, please reply at once and advise how to get the locations at Marquette—Whose are the lands dotted red on the map sent us? Does the lowest red line represent the Mackinaw & Marquette Road? Are the 40s surrounded by red lines up near Vermillion Point part of your location? Write us fully about these matters—Keep us well posted about the country you go through and the lands you see and write if you know of any better section to find lands—Bardon seems to have some doubts whether he will find all he wants there—and says if he don't he will take you without loss to me—as to this perhaps I can use you for a year if you fail to find all you want where you are—Write me when you can.

"Truly yours, H. W. Sage."

It appears from this letter that it was written in response to complainant's letter to Henry W. Sage, of November 29, 1880, and that the letter of November 29th was destroyed some years later, and

after the death of H. W. Sage, by one of his sons. Complainant not having kept a copy of it, neither the original nor copy is produced. H. W. Sage died in 1897.

The complainant was examined as a witness in his own behalf, and was asked to state the subject-matter of his letter to H. W. Sage of November 29th. Over the objection of the defendant, the witness answered, in so far as it is material to quote here:

"I asked Mr. Sage if he knew of any one that would care to invest in that kind of lands and timber; that the Detroit, Mackinaw & Marquette R. R. were contemplating locating all the government land there was left in the Upper Peninsula in the vicinity of that railroad, and asked him if he knew anybody that would care to take those lands, giving me a quarter interest in the lands, and I think, though I am not positive about this, its equivalent in cash. I probably asked him something more than a dollar and a quarter an acre, because if I simply put it a dollar and a quarter, they would think they were not getting much of a bargain in buying it."

And again the witness was asked:

"Q. What change from your proposition to Mr. Sage did you understand he made by this letter of December 7th? A. I remember distinctly that my proposition was one-quarter interest in the lands, and this is one-fifth in the letter.

"Q. And do you understand that was the only change he made from your proposition? A. Yes, sir. * * *

"Q. And what did you say to Mr. Sage respecting his proposition to you? What did you answer him by letter? A. I accepted the proposition as he made it."

The admission of this evidence is assigned as error. The objection is based upon the ground that such evidence is incompetent under section 101, Act No. 30, Public Acts of the State of Michigan, 1903, which is as follows:

"Sec. 101. * * * When any suit or proceeding is prosecuted or defended by any surviving partner or partners, the opposite party, if examined as a witness, in his own behalf, shall not be admitted to testify at all in relation to matters which, if true, must have been equally within the knowledge of the deceased partner, and not within the knowledge of any one of the surviving partners. * * * And when any suit or proceeding is prosecuted or defended by any corporation, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all in relation to matters which, if true, must have been equally within the knowledge of a deceased officer or agent of the corporation, and not within the knowledge of any surviving officer or agent of the corporation. * * * Provided, that whenever the words 'the opposite party' occur in this section, it shall be deemed to include the assignors or assignees of the claim or any part thereof in controversy. * * *"

All of the stockholders of the defendant corporation, except one, were members of the partnership of H. W. Sage & Co. on November 29, 1880, the date when the letter was written by complainant. That letter, it is true, was addressed to H. W. Sage personally and was answered by him, as we have seen, on December 7th; but the record is replete with evidence to the effect that he was acting for H. W. Sage & Co. It is not probable that H. W. Sage acted on so important a matter without consulting his copartners, and we think that the reasonable deduction from the facts proven is that the contents of the letter of November 29th were equally within the knowledge of

H. W. Sage and his copartners, his two sons, one of whom states that he gave his entire attention to the business.

For the reasons stated, without determining whether, under the doctrine of White v. Wansey, 116 Fed. 345, 53 C. C. A. 634, this evidence is, in the condition of the record, to be now regarded as having been admitted in the court below without objection and by consent, we are of the opinion that the evidence objected to does not fall within the Michigan statute relied upon, and was properly admitted.

[7] Independent, however, of this piece of evidence, we think the Circuit Court properly construed the contract of December 7, 1880. It was written by H. W. Sage, who, as the records disclose, was an experienced and a successful business man, and was accustomed to handling business transactions of large proportions.

In construing contracts of doubtful meaning, this court held, in the case of Mt. Vernon Refrigerating Company v. Fred W. Wolf Co., 188 Fed. 164, that it should be construed most strongly against the party that prepared it, and that its various provisions should be considered together, and in the light of the situation of the parties, keeping in mind the object that is sought to be attained. Noonan v. Bradley, 9 Wall. 407, 19 L. Ed. 757; Christian v. First Nat. Bank, 155 Fed. 709, 84 C. C. A. 53, and cases there cited; McKell v. C. & O. Ry. Co., 175 Fed. 321, 99 C. C. A. 109; Hull Coal Co. v. Empire Coal Co., 113 Fed. 256, 51 C. C. A. 213.

Recurring again to the letter of December 7th: The construction placed upon it by complainant is: That H. W. Sage & Co. proposed to buy the 20,000 acres of land—16,000 acres for themselves, and 4,000 acres for the complainant. The 4,000 acres was the consideration that he received for his labor, skill, and knowledge in making advantageous locations of timber land, as was evidenced by his maps, data, and estimates, and other information furnished by him to H. W. Sage, upon which H. W. Sage & Co. purchased the lands. That when the property was sold by them, he was entitled to whatever the 4,000 acres brought, less the taxes and other expenses that Sage & Co. had advanced for him on that account, with legal interest.

Defendant's construction is that the 20,000 acres of land was the property of H. W. Sage & Co., and that complainant was only entitled to one-fifth of the sum remaining after deducting from the total amount for which the property was sold, the sum of its original cost, and taxes and other expenses incident to carrying the deal, with 7 per cent. compound interest.

At the time of making the contract in 1880, complainant was what is termed in the bill a "land looker and timber estimator," and had been so engaged for several years. He apparently lived in the woods of Michigan and Wisconsin, locating timber lands, and estimating the quantity of timber thereon, and making minutes, plats, and maps thereof, for the purpose of enabling him to furnish this information to those who desired to invest in such property.

H. W. Sage & Co. had large means, and were engaged in buying

timber lands for speculation, and such information as complainant possessed was of great value to them.

At the date last mentioned, there was no active market in that section for such lands, and whether there would ever be was problematical. The information furnished by complainant to H. W. Sage in respect to these lands was obtained by him as the result of several years of labor, and required a high degree of skill and the exercise of much good judgment. It would not seem probable the complainant would have furnished this information to Sage & Co. on the remote probability of the increase in the price of these lands upon the market for a consideration of one-fifth of the net proceeds when the deal should be closed. The greater probability is that he would have required something of some real value and more tangible.

This, he says, he did, and that he understood the contract to be that he was the owner of one-fifth of the 20,000 acres of land purchased, and that H. W. Sage held the title thereto as trustee until 1893, when he conveyed it to defendant, and the defendant held the title to it in the same capacity until it was sold.

[8] That H. W. Sage conveyed the lands in question to the defendant is not controverted. It is clear that H. W. Sage held the title as trustee, and that the defendant took the place of Sage in this fiduciary capacity. That it became such trustee with full knowledge of all the transactions relating to this land deal, there is but little room for speculation.

H. W. Sage was the original trustee, and the senior member of the firm of H. W. Sage & Co. He held the lands in trust for his firm and complainant. He organized the defendant corporation, and he and his sons, his copartners, and one of his grandsons, were the sole owners of the stock of said corporation. This corporation was organized for the express purpose of taking over the property in question, and to hold it in the room and stead of H. W. Sage, and in the same capacity. He was its president for four years, and, prior to its organization, he it was that requested complainant to agree to this transfer, in a letter of March 7, 1893. It opened with this language:

"We are thinking of organizing the 'Sage Land Co.,' and transferring to it all of our lands which, as you know, are now all in the name of H. W. S. This will involve no change in ownership, except that Dean's oldest son Henry will have an interest—but is done mainly for convenience and to make it impossible for any trouble to arise in making deeds, etc., in case of death of any member of the firm."

Under the facts stated, and others appearing in the record, of which space forbids a recitation here, we think that the defendant took the lands with full notice of the trust, and that the trust followed the lands into the hands of the defendant, and that the lands were held by it subject to the trust, and to the rights of complainant therein.

[9] One other question remains to be noticed. In the account kept of this transaction by H. W. Sage and his successor, the defendant, interest at the rate of 7 per cent. compounded was charged on the amount originally paid for the land, and the taxes, and other ex-

penses incident to the carrying of the lands. This was disallowed by the Circuit Court, and interest allowed under the so-called "Michigan rule" only upon the money advanced to carry the lands, consisting of the taxes and other necessary expenses paid. We see no reason to disturb this finding.

The result is that we find no error in the decree of the Circuit Court, and it is affirmed, with costs.