Argued April 2, decided April 16, 1912.

# BONELLI *v.* BURTON.

### [123 Pac. 37.]

DEEDS—CANCELLATION—FRAUD—SUFFICIENCY OF EVIDENCE.

1. Evidence, in a suit to cancel a contract and a deed to defendant pursuant thereto, because of fraudulent misrepresentations to plaintiff by the interpreter procured by defendant, *held* to sustain a finding that fraud was practiced upon plaintiff by the interpreter.

EVIDENCE—PRESUMPTIONS—FAILURE TO TESTIFY.

2. Failure of a party to testify in explanation of adverse evidence raises a presumption against him, unless the explanatory evidence was not peculiarly within his power, or was merely cumulative or inadmissible, or its necessity could not have been reasonably anticipated by him.

PRINCIPAL AND AGENT—REPRESENTING ADVERSE PARTIES.

3. An agent may represent adverse parties to a transaction, if each party knows of his employment by the other.

PRINCIPAL AND AGENT—JOINT AGENT—AGENCY OF INTERPRETER.

4. Two persons speaking different languages, who agreed upon a third person to translate for them any· transaction, each made such interpreter their agent, so that each might rely upon the communication made to him, through the interpreter, as being the statement of the other party.

PRINCIPAL AND AGENT—EXISTENCE OF AGENCY.

5. One who agreed to pay an interpreter for his services in carrying on negotiations with another, who spoke a different language, made the interpreter his agent in the negotiations, so as to be liable for material misrepresentations by him.

FRAUD—FRAUDULENT MISREPRESENTATIONS.

6. One who makes a representation as of his own knowledge, without knowing whether it be true or false, is guilty of fraud, if it in fact be false.

DEEDS—CONTRACT—VALIDITY—FRAUD.

7. That plaintiff, in agreeing to sell land to defendant, relied upon false statements by defendant's agent as to the amount of land in the tract, plaintiff being ignorant thereof, and consummated the contract of sale because of such representations, was ground for canceling the contract and deed.

CANCELLATION OF INSTRUMENTS—BONA FIDE PURCHASERS.

8. The transfer of a contract, executed by a vendor to sell land, did not make the assignee an innocent purchaser for value, or vest in him any rights superior to that of the assignor, so that the vendor, if the contract was obtained by fraud, could cancel it as against the assignee, as well as the deed executed by the original purchaser to such assignee after conveyance by the vendor.

CANCELLATION OF INSTRUMENTS—OFFENSE.

9. In an action to cancel a contract to sell land and a deed executed pursuant thereto, brought against the other party to the contract and his assignee, the latter could not show that he was an innocent purchaser without notice, unless such defense was pleaded.

CANCELLATION OF INSTRUMENTS—FRAUD—TIME TO SUE.

10. Plaintiff contracted to sell land to defendant on March 2, 1909, and on May 5th defendant executed a deed, purporting to convey plaintiff's interest in the premises. Plaintiff could not speak the English language, and was ignorant of the customs of the country; the transaction being carried on through an interpreter. *Held*, that a suit to cancel the contract and deed for fraudulent misrepresentations by defendant, brought June 30, 1909, was not too late; it not appearing that there had been any material change in the value of the land.

From Multnomah: JOHN B. CLELAND, Judge.

Statement by MR. JUSTICE MOORE.

This is a suit by Daniele F. Bonelli against W. B. Burton and J. S. Barber to annul a contract for the sale of an interest in land, to cancel a deed therefor, and to obtain a conveyance thereof. The cause being at issue was tried, and findings of fact were made to the effect that, on March 2, 1909, plaintiff was the owner in fee of an undivided one-fifth of lot 19, in subdivision 2, of De Lashmutt & Oatman's Little Holmes, containing five acres, lots two and three, in block eight, in the Ainsworth tract, which lots are 156.875 feet in width by 460 feet in length, and also a strip of land of specified dimensions, commencing at a designated point, and all situate in the city of Portland; that plaintiff is a native of Austria, from which country he recently came to look after his interest in these lands that had been obtained by devise from his brother Angelo Bonelli, deceased; that plaintiff is unable to speak any English, and, in order to converse with any persons in that language, he is compelled to employ an interpreter; that at the time stated Barber was engaged in that city as a real estate agent and knew the dimensions of the several pieces of land, the sizes of which were unknown to plaintiff; that,

in order to defraud plaintiff, Barber gave several hundred dollars to John Camilio, an interpreter, who, in consideration thereof, falsely represented to plaintiff that the first-described tract of land contained only three acres, and the second was only 50 by 200 feet; that plaintiff, not knowing the falsity of such representations, but believing them to have been true and relying thereon, was induced to sign a contract on the day stated whereby he stipulated to sell and convey to Barber all his interest in the premises for $1,140, when his share of the lands was worth not less than $3,000; that, pursuant to that contract, plaintiff signed and acknowledged a deed, purporting to convey to Barber such interest, which deed was placed in escrow with a bank, to be delivered upon payment of the stipulated consideration; that on March 22, 1909, Burton secured an assignment of such contract, and on May 21st of that year the defendants paid to the bank the consideration specified, received the deed and caused it to be recorded; that three days thereafter Barber and his wife executed to Burton a deed, purporting to convey plaintiff's interest in the real property; that plaintiff is, and at all times since bringing this suit has been, able, willing, and ready to give defendants the sum of money which they paid for his interest in the land. As conclusions of law, the court found, in substance, that plaintiff's deed was obtained by false and fraudulent representations; that at the time Barber assigned the contract of sale he had no title to the real property; that plaintiff repudiated the transactions within a reasonable time after discovering the fraud, and was entitled to rescind the bargain and have the contract of sale and his deed canceled upon repaying the sum of $1,140, with interest from May 21, 1909; that Burton was not a *bona fide* purchaser, or entitled to any protection as such under the pleadings and evidence herein; and that he should execute to plain-

tiff a good and sufficient deed of an undivided one-fifth interest in the several tracts of land, within 10 days, upon receiving the sum specified. A decree was given in accordance with the findings, and the defendants appeal. AFFIRMED.

For appellants there was a brief over the names of *Mr. J. O. Stearns* and *Mr. D. M. Donaugh,* with an oral argument by *Mr. Stearns.*

For respondent there was a brief over the names of *Messrs. Veazie & Veazie,* with an oral argument by *Mr. Arthur L. Veazie.*

MR. JUSTICE MOORE delivered the opinion of the court.

1. It appears from the testimony that in negotiating for the purchase of an interest in the lands Barber spoke English only, and the interpreter made declarations to plaintiff, who could not understand that language, as to the size of the tracts, giving only three-fifths of the area of one and less than one-seventh of another. No other person who spoke both languages having been present at the time the bargin was made, it is impossible to state whether or not Barber's representations were correctly explained to plaintiff. Based on this circumstance, it is insisted by defendant's counsel that the evidence was insufficient to connect Barber with any fraud that may have been practiced upon the plaintiff; and such being the case an error was committed in rendering the decree brought up for review.

There was received in evidence a written memorandum, of which the following is a copy:

"I, the undersigned, agree to pay John Camilio $50.00 for interpreting and agree to make an estimate of the value of the estate of Angelo Bonelli, Giovanni Schraffle & Daniele Bonelli and all remaining heirs, four months

from date and divide profit between John Camilio and J. S. Barber.

[Signed]  J. S. Barber,
John Camilio."

2. A witness for plaintiff testified that Barber informed him that when he first saw Camilio the latter proposed a division of the profits, or a commission, in case of a sale of interest in the real property; whereupon the memorandum was executed, and, pursuant to its terms, Camilio had been paid several hundred dollars for services performed in securing interests of other devisees. Barber was in court, but did not take the stand as a witness. "The omission of a party to an action to testify to facts, or to produce evidence in explanation of or to contradict adverse testimony," says a tex-writer, "raises a presumption against his claims, except where the evidence is not peculiarly within his power, or is merely cumulative, or is privileged, or incompetent, or its necessity could not have been reasonably anticipated by the party." Lawson, Presumptive Evidence, p. 153. Such also, is the holding of this court. *Mooney* v. *Holcomb,* 15 Or. 639, 641 (16 Pac. 716) ; *Wimer* v. *Smith,* 22 Or. 469, 477 (30 Pac. 416).

3. An agent may act for and represent ·adverse parties to a transaction, and receive compensation for his services from both, provided each party knows of his employment by the other. *Jameson* v. *Coldwell,* 23 Or. 144 (31 Pac. 279). As no testimony was produced tending to show that plaintiff knew Camilio was to be paid a compensation by Barber, the memorandum received in evidence and the testimony offered in explanation thereof tend to prove that plaintiff was deceived by a person whom he regarded as a freind.

Neither plaintiff nor Barber could understand each other, but were obliged to rely upon the interpreter, and, this being so, were the representations made by Comilio

to plaintiff, as to the dimensions of the land, imputable to Barber, without proof that he knew of the falsity of such statements? The plaintiff testified through an interpreter that, as he and a nephew were going to one of the tracts of land in question, they met Camilio, whom they invited to accompany them; but he was not engaged as an interpreter.

"When a person," says an author, "selects an interpreter to communicate with another person, and to receive the answers, such interpreter is the accredited agent of the one employing him; and the statements of the interpreter in the course of the employment are admissible as original evidence, and are in no sense hearsay; nor is it necessary to call the interpreter to prove such statements, or that his interpretation was correct." 1 Jones, Evidence, § 267. See, also, Greenleaf, Evidence, § 183; 1 Wigmore, Evidence, § 668; *Commonwealth* v. *Vose*, 157 Mass. 393 (32 N. E. 355: 17 L. R. A. 813, and notes).

4. When two parties, who speak different languages and cannot understand each other, voluntarily agree upon a third person to translate for them, they make the interpreter their agent, so that each has a right to rely on the communication made to him by the other party through his representative. *Sullivan* v. *Kuykendall*, 82 Ky. 483, 489 (56 Am. Rep. 901); *Miller* v. *Lathrop*, 50 Minn. 91, 93 (52 N. W. 274). An interpreter selected by adverse parties, who speak different languages and cannot understand each other, being the agent of both, his representations, made in their presence and hearing, in communicating to one what purport to be the expressions of the other, related in the regular course and prior to the termination of the business, are chargeable to each; and the other is entitled to rely on such representations. In case of a conflict of interests between

parties to a contract that has been concluded by an interpreter, his testimony, if believed, must corroborate or refute the sworn declarations made by the party who claims to have been overreached in the transaction by the fraudulent representations of the adverse party through the interpreter. At the trial of this cause, Camilio did not appear as a witness; and in such a case it would ordinarily be impossible for either party to establish or disprove the assertion of the other, unless some person was present at the transaction who could speak both languages; for neither party to a contract, which had been brought to an issue by an interpreter, could truthfully say that the statements made by the other were correctly reproduced by their agent.

5, 7. The difficulty adverted to, however, does not arise herein; for one of the defendants, having, in writing, promised to pay Camilio a consideration for his services, thereby clothed the interpreter with an agency that rendered Barber liable to plaintiff for any material misrepresentations made by such agent. "If a man," says Mr. Kerr in his work on Fraud (page 54), "makes a representation as of his own knowledge, not knowing whether it be true or false, and it is in fact untrue, he is guilty of fraud, as much as if he knew it to be untrue." To the same effect, see *Cawston* v. *Sturgis*, 29 Or. 331 (43 Pac. 656) ; *Vaughn* v. *Smith*, 34 Or. 54 (55 Pac. 99). The fraudulent statements made by Camilio were believed to be true by plaintiff, who, relying thereon, consummated the contract for the sale of the property; and such representations afford a sufficient ground for relief as against Barber. *Foss* v. *Newbury*, 20 Or. 257 (25 Pac. 669) ; *Schoellhamer* v. *Rometsch*, 26 Or. 394 (38 Pac. 344).

8. Having determined that one of the principals was responsible for the misrepresentations of his agent,

does the fraud of Camilio authorize a cancellation of the agreement for the sale of an interest in the land, and of the deed executed to Burton? This contract created only an equity, the transfer of which did not make Burton an innocent purchaser, or give him any right to the premises superior to that possessed by the assignor. Kerr, Frauds, 321. In *Boone* v. *Chiles,* 10 Pet. 177, 209 (9 L. Ed. 388), Mr. Justice BALDWIN, discussing this subject, says: "A purchaser with notice may protect himself under a purchaser by deed without notice, but cannot do it by purchase from one who holds claims by contract only. The cases are wholly distinct. In the former, the purchaser with notice is protected; in the latter, he has no standing in equity, for an obvious reason—that the plaintiff's elder equity shall prevail, unless the defendant can shelter himself under the legal title acquired by one whose conscience was not affected with fraud or notice, and who can impart his immunity to a guilty purchaser, as the repersentative of his legal rights, fairly acquired by deed, in such a manner as exempts him from the jurisdiction of a court of equity. Such a purchaser affixes no stain on the conscience, and equity cannot disturb the legal title. But, as it does not pass by a contract of purchase, without deed, the defendant can acquire only an equity, the transfer of which does not absolve him from the consequences of his first fraudulent purchase."

A contrary rule, preventing a grantee of land with notice from holding a title which he had secured from an innocent purchaser of the premises, for a valuable consideration, without notice, would be equivalent to placing a restraint upon alienation; for, if such a doctrine were to obtain, a grantor who had been defrauded could, by imparting notice of his loss or injury, forever defeat any further transfer of the title, unless by a conveyance

he relinquished his rights to the premises. *Henninger* v. *Heald,* 52 N. J. Eq. 431, 439 (29 Atl. 190).

The contract for the sale of the land created only an equity, whereby an equity remained in the plaintiff, whose right was superior to Burton's because it was prior in time, having been reserved by Bonelli before the contract was assigned by Barber.

9. Burton and Barber jointly answered, admitting that plaintiff sold and conveyed his interest in the lands to Barber for $1,140, and that the latter and his wife conveyed the premises to Burton; but every other allegation of the complaint was denied. Burton did not allege in any answer that he was an innocent purchaser, for a valuable consideration, without notice, of plaintiff's equity, or set forth the facts from which such conclusions are deduced, which averments were essential, in order to interpose a defense of that character. *Baker* v. *Woodward,* 12 Or. 3, 15 (6 Pac. 173); *Weber* v. *Rothchild,* 15 Or. 385, 389 (15 Pac. 650: 3 Am. St. Rep. 162); *Wood* v. *Rayburn,* 18 Or. 3, 19; *Hyland* v. *Hyland,* 19 Or. 51, 55 (23 Pac. 811); *Simpkins* v. *Windsor,* 21 Or. 382, 386 (28 Pac. 72). The answer was insufficient in the particulars noted; and, such being the case, the trial court properly disregarded all testimony on that subject.

10. It is maintained that this suit was not commenced within a reasonable time after the discovery of the fraud. The contract for the sale of the land was made March 2, 1909, and on May 21st of that year Barber and his wife executed to Burton a deed, purporting to convey plaintiff's interest in the premises. This suit was begun June 30, 1909, and the trial court found that it was instituted within a reasonable time. In cases of fraud to annul a contract or to set aside a deed, the question of what is a reasonable time for that purpose

must depend largely upon the kind of property involved and its liability to fluctuate in value. After conveying property for what was, at the time, considered its fair value, a party will not be permitted to wait developments and, if the worth increases, maintain a suit to annul a contract that would never have been challenged, except for cupidity. The evidence does not show any material changes in the value of the land involved herein occurring between March 2, 1909, and June 30th of that year. We conclude that the suit was begun within a reasonable time after the discovery of the fraud, when are considered the inability of the plaintiff to speak the English language and his ignorance of the customs of our country. *Grewing* v. *Minneapolis T. M. Co.*, 12 S. D. 127, 134 (80 N. W. 176).

No facts are alleged in the answer, whereby the plaintiff would be estopped to maintain this suit. Believing that the evidence fully sustains the findings and conclusions made by the trial court, it follows that the decree should be affirmed; and it is so ordered.

                                        AFFIRMED.