## REICHERT *v.* NEGAUNEE STATE BANK.

### In re PETITION OF HUHTALA.

1. BANKS AND BANKING—PREFERENCES—BANK COLLECTION CODE.
    Owner of checks left with bank which later closed must show they were left for collection only and not for deposit in order to establish claim of preference under bank collection code (Act No. 240, Pub. Acts 1931).

2. PRINCIPAL AND AGENT—INTERPRETERS.
    Each of two parties acting through interpreter voluntarily agreed upon to translate for them, has a right to rely on communication made in such manner.

3. SAME—WITNESSES—OPPOSITE PARTIES—MATTERS EQUALLY WITH-IN KNOWLEDGE OF DECEASED.
    An interpreter is an agent for the purpose of conveying the meaning of one party to the other but not for "the making or continuing of a contract" within the meaning of statute barring testimony by opposite parties on matters equally within the knowledge of deceased bank official (3 Comp. Laws 1929, § 14219).

4. WITNESSES—PECUNIARY INTEREST—RELATIONSHIP.

> Testimony of witness who acted as interpreter between her foster-mother and bank cashier, since deceased, was erroneously excluded on the ground of interest in transaction involved where interest of witness was merely that of a relative and not pecuniary (3 Comp. Laws 1929, § 14219).

5. EVIDENCE—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED.

> Evidence of owner of two checks left with bank that she had no knowledge a commercial account had been opened for her was clearly admissible where within the knowledge of surviving officers of the bank (3 Comp. Laws 1929, § 14219).

6. SAME—DEPOSIT SLIPS—CASH ENTRIES—SELF-SERVING STATEMENTS —BANKS AND BANKING.

> Deposit slips, cash entries and other bank records pertaining to an account fraudulently or erroneously opened without knowledge or approval of owner of checks of which the account represents proceeds, are self-serving statements and inadmissible in action to secure preference as to assets in hands of bank receiver.

7. BANKS AND BANKING—PREFERENCES—BANK COLLECTION CODE.

> Owner of insurance checks who left them with bank with instructions to purchase government bonds and pay funeral bill with proceeds is entitled to preference against assets of bank in hands of receiver, where proceeds were wrongfully deposited in checking account (Act No. 240, Pub. Acts 1931, § 13, subd. 3).

Appeal from Marquette; Stone (John G.), J., presiding. Submitted January 16, 1934. (Docket No. 46, Calendar No. 37,463.) Decided April 3, 1934.

Receivership proceedings by Rudolph E. Reichert, State banking commissioner, against Negaunee State Bank. On petition of Sofia K. Huhtala for preference as to certain funds. Petition denied. Petitioner appeals. Reversed.

*M. J. Kennedy,* for appellant.

*Berg & Clancey* (*Francis A. Bell,* of counsel), for receiver.

EDWARD M. SHARPE, J. John Huhtala, an employee of the Hanna Company, died September 16, 1932, and under the company insurance plan his widow, Sofia Kate Huhtala, was entitled to $5,000 insurance. There was also some insurance with the Northwestern Mutual Life Insurance Company. On October 11, 1932, G. M. Cannon, assistant general manager of the Hanna Company, delivered to the widow (petitioner herein) a negotiable check for $5,000 drawn upon a New York bank and issued by the Equitable Life Assurance Company. Before delivering the check, Cannon conferred with Thomas Pascoe, cashier of the defendant bank, and both agreed that the money should be used to purchase United States government bonds. Pascoe advised that the check be left with him, stating that he had been appointed administrator of the estate of John Huhtala. Cannon, however, preferred to deliver the check to Mrs. Huhtala and did so. Mrs. Huhtala cannot speak the English language and as Cannon did not speak Finnish, Mrs. Huhtala's niece, Elmie Makela, acted as interpreter. Mrs. Huhtala, at the suggestion of Cannon, was agreeable to the purchase of government bonds and, through her niece as interpreter, told Cannon to take the check back to the bank and order the government bonds. Cannon returned to the bank with the unindorsed check and delivered the same to the assistant cashier, Yalmer Heinonen, who gave Cannon a receipt for the same.

After Cannon left the bank, the assistant cashier at the order of the cashier took the check back to Mrs. Huhtala to have it indorsed. Nothing was said at this time about opening a commercial account in the bank for Mrs. Huhtala, although upon his return to the bank the assistant cashier at the cashier's

order opened a commercial account in the name of Kate S. Huhtala.

Two or three days later Mrs. Huhtala and Mrs. Ellen Hietala, her adopted daughter, called at the bank and talked with Thomas Pascoe, the cashier, Ellen Hietala acting as interpreter. Pascoe told them that Cannon had left the check and that he was holding it until the bonds came that he had ordered. At this same conversation, petitioner told the cashier that when the $992.05 due from the Northwestern Mutual Life Insurance Company came, Pascoe was to pay the funeral expenses out of it and deposit the balance in a checking account for Mrs. Huhtala.

October 24, 1932, the $992.05 check reached the bank and Fred Pascoe, an employee of the bank and brother of Thomas Pascoe, the cashier, brought the check to petitioner for her indorsement. At the same time he advised Mrs. Huhtala through an interpreter to bring in the funeral bill, which later proved to be the sum of $457. After securing Mrs. Huhtala's indorsement on the $992.05 check, this amount was credited to the commercial account of petitioner. Although Mrs. Huhtala brought in the funeral bill in a day or two, it was never paid from her account.

As soon as the bank received these two checks, it forwarded each for collection and received credit for the same, the assets of the bank being thus enhanced to that extent. After the bank closed October 29, 1932, Mrs. Huhtala learned for the first time that she was credited with a commercial account on the books of the bank in the sum of $5,992.05. At the time the bank closed, it did not own or have in its possession sufficient United States bonds to amount to $5,000. The cashier of the bank had petitioned the probate court to act as administrator of the

estate of John Huhtala, but having failed to qualify, the petitioner was appointed administratrix December 5, 1932.

The purpose of this petition is to establish a preferred claim against the assets of the Negaunee State Bank, now in receivership, for the amount of these two checks, $5,000 and $992.05 respectively. In order to establish her claim under the bank collection code (Act No. 240, Pub. Acts 1931), petitioner must show that the checks were left with the bank for collection only and not for deposit. The evidence admissible was considerably restricted by the death of the bank cashier. The trial court denied the petition and allowed the claim as a general one. From this order petitioner appeals.

The petitioner contends that the lower court should have admitted the evidence of Ellen Hietala, who acted as interpreter during the conversation between Mrs. Huhtala and the cashier in which Pascoe stated that the insurance check for $5,000 had been delivered to the bank, that he had ordered the bonds as requested by Cannon, and that he was holding the check until the bonds came; and in which Mrs. Huhtala stated that when the $992.05 check was received the bank was to pay the funeral bill of $457 and open a checking account for petitioner for the balance. Petitioner further contends that her testimony that she did not open any checking account nor authorize the same, inasmuch as this testimony was a matter within the knowledge of Yalmer Heinonen, assistant cashier, a surviving officer of the bank, was admissible. Plaintiff also contends that it was error on the part of the trial court to have admitted the deposit slips and ledger account of the bank showing a commercial account opened with the two checks of $5,000 and $992.05, and that

the checks took the usual course that checks would take that had been deposited by anyone in the bank.

3 Comp. Laws 1929, § 14219, provides as follows:

"When a suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees or personal representatives of a deceased person, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all to matters which, if true, must have been equally within the knowledge of such deceased person; * * * No person who shall have acted as an agent in the making or continuing of a contract with any person who may have died, shall be a competent witness in any suit involving such contract, as to matters occurring prior to the death of such decedent, on behalf of the principal to such contract against the legal representatives or heirs of such decedent, unless he shall be called by such heirs or legal representatives. And when any suit or proceeding is prosecuted or defended by any corporation, the opposite party, if examined as a witness in his own behalf, shall not be admitted to testify at all in relation to matters which, if true, must have been equally within the knowledge of a deceased officer or agent of the corporation, and not within the knowledge of any surviving officer or agent of the corporation, nor when any suit or proceeding is prosecuted or defended by the heirs, assigns, devisees, legatees, or personal representatives of a deceased person against a corporation (or its assigns) shall any person who is or has been an officer or agent of any such corporation be allowed to testify at all in relation to matters which, if true, must have been equally within the knowledge of such deceased person."

The question before us is whether Ellen Hietala, as the interpreter between Mrs. Huhtala and Mr. Pascoe, was the agent of the petitioner so as to

exclude her testimony of that conversation. Unquestionably an interpreter is in some respects the agent of one or both parties.

"When two parties, who speak different languages and cannot understand each other, voluntarily agree upon a third person to translate for them, they make the interpreter their agent, so that each has a right to rely on the communication made to him by the other party through his representative." *Bonelli* v. *Burton,* 61 Ore. 429, 434 (123 Pac. 37).

See, also, a statement to the same effect from 10 R. C. L. p. 930, quoted with approval in *Krajewski* v. *Western & Southern Life Ins. Co.,* 241 Mich. 396, 401, a case in which statements made through an interpreter were taken as admissions against interest. It has also been held that in the case of a joint agent or attorney, the interest of the agent or attorney in testifying for or against either party will be presumed to be equal and his testimony therefore competent. *Whiddon* v. *Hall,* 155 Ga. 570 (118 S. E. 347); *Christopher* v. *Mooty,* 158 Ga. 315 (123 S. E. 19).

An interpreter, although an agent for the purpose of conveying the meaning of one party to the other, is not an agent for "the making or continuing of a contract" within the meaning of our statute. An agent who is not actually acting in the transaction is not barred from testifying for his principal after the death of the opposite party. *Brennan* v. *Railroad Co.,* 93 Mich. 156; *Krause* v. *Equitable Life Assurance Society,* 105 Mich. 329; *Wallace* v. *Fraternal Mystic Circle,* 121 Mich. 263; *Rousseau* v. *Brotherhood of American Yeomen,* 177 Mich. 568.

Ellen Hietala's testimony cannot be excluded upon the ground of interest in that she was the adopted daughter of petitioner. This court has ex-

cluded testimony of parties having a direct pecuniary interest although the statute does not expressly disqualify interested parties who are not parties to the record. *Cutter* v. *Powers,* 200 Mich. 375. But the interest necessary to disqualify a witness must be a pecuniary one and not mere relationship. *Wilson* v. *Wilson Estate,* 80 Mich. 472; *Weessies* v. *Van Dyke's Estate,* 159 Mich. 180; *Miller* v. *Kelly,* 215 Mich. 254; *Shea* v. *Siller,* 262 Mich. 279; *Caswell* v. *Smith's Estate,* 263 Mich. 390.

We must therefore conclude that the trial court was in error in excluding the testimony of Ellen Hietala. Likewise the testimony of Elmie Makela is admissible to show that when Heinonen called to see petitioner and have her indorse the check no directions were given by plaintiff to open a commercial account.

The testimony of petitioner that she never opened a commercial account in the bank and had no knowledge of such an account being opened was clearly admissible as it was within the knowledge of surviving officers of the bank. *Stetson* v. *Mackinac Transportation Co.,* 182 Mich. 355; *Lyttle* v. *Railway Co.,* 84 Mich. 289; *Sage Land & Improvement Co.* v. *Ripley,* 114 C. C. A. 339 (192 Fed. 785).

Competent testimony in the record shows that on the 11th day of October, 1932, petitioner talked to Cannon about the purchase of Liberty bonds, that when Cannon delivered the check to Heinonen no instructions were given to open up a commercial account, that when the assistant cashier returned to petitioner to have the check indorsed nothing was said about opening a commercial account, that the cashier and petitioner did not see or talk to each other on the 11th day of October, 1932. It further appears that on October 24, 1932, when the $992.05

check was brought to petitioner by Fred Pascoe, an employee of the bank, for her indorsement, no conversation was had about opening a commercial account. The inference must be that when the cashier ordered the assistant cashier to open a commercial account for petitioner in the sum of $5,000 it was done either through mistake or fraud upon the part of the cashier. We think that under the circumstances the trial court was in error in permitting the defendant to introduce in evidence the deposit slips and other bank records pertaining to this account. Cash entries made by one party without the knowledge or approval of the other party are self-serving statements and inadmissible as testimony. *Tioga Manfg. Co.* v. *Stimson,* 48 Mich. 213; *Conroy* v. *Haffner,* 182 Mich. 289, and cases cited therein.

Inasmuch as the Negaunee State Bank had no authority to deposit in said bank the check for $5,000 or the check for $992.05 or the proceeds thereof contrary to the direction of petitioner, the facts of this case come within section 13, subd. 3 of the bank collection code (Act No. 240, Pub. Acts 1931).

The judgment entered will be reversed and set aside and the cause remanded to the trial court with directions to enter the $5,000 check and the item of $457 as a preferred claim against the assets of said bank. The item of $535.05 representing the balance of the $992.05 check may be entered as a general claim against the assets of said bank. Petitioner will have costs.

NELSON SHARPE, C. J., and POTTER, FEAD, WIEST, BUTZEL, and BUSHNELL, JJ., concurred with EDWARD M. SHARPE, J. NORTH, J., concurred in the result.