### STROUD v. PECHACEK et al.
### No. 8680.

Court of Civil Appeals of Texas. Austin.

Oct. 12, 1938.

Laurie M. Huck, of San Antonio, for appellant.

I. N. Jett, of Smithville, for appellees.

McCLENDON, Chief Justice.

Appellee Vince Pechacek and wife owned 100 acres of land in Fayette County, less one-half of the mineral estate therein which had been reserved by their grantor. July 17, 1929, they executed two instruments, which were recorded July 19, 1929; one in favor of Slack, which was a deferred rental payment oil and gas lease; the other in favor of Stroud (appellant), which conveyed one-half of their royalties under the Slack lease, and, subject to that lease, one-half of their mineral estate in the 100 acres. This suit was brought in 1936 by Pechacek and wife and their son, to whom they had meanwhile conveyed 25 acres of the land, against Stroud (and others not involved in the appeal) to cancel the Stroud mineral deed on the ground that it had been fraudulently represented to them that the deed was merely a lease. In a trial to the court, judgment was rendered canceling the deed as to Stroud; who has appealed.

Two issues control the appeal: (1) whether the trial court's findings sustain the claim of fraud; and if so (2) whether the suit was barred by the four years statute of limitations, R.C.S. Art. 5529.

Upon the first issue we make the following statement:

In July, 1929, Slack was engaged in "assembling a block of leases for * * *

Stroud, and the leases were taken in my (Slack's) name." He "took Frank Adamcek, Jr., along because he knew the people, and was an outstanding man in the community." Slack further testified that he took Adamcek along "both as an interpreter, and because he was well known in the community, and has a good reputation." Adamcek (since deceased) was a neighbor of the Pechaceks. The latter spoke only the Bohemian language, and they and Adamcek were the only ones present who understood Bohemian, Adamcek acting as interpreter. The court's pertinent fact findings follow: "The court further finds from the evidence that plaintiffs were aged, ignorant Bohemian farmers, with very meager knowledge and command of English, and could not understand sufficient English to read and understand a deed and mineral lease; and probably so unversed in the ways of business not to be able to understand them if explained in their native language. No witness who could speak the Bohemian language testified that he had explained such instruments to them in Bohemian language, the only witness attempting to contradict plaintiff's testimony that they did not understand was J. S. Slack, lessee in one of the instruments and the agent of grantee in the other, and he could not understand Bohemian language, and did not testify that the interpreter (now dead) correctly interpreted the instruments to plaintiffs. Plaintiffs testified, and the court finds it to be a fact, that they were' under the impression that the two instruments they signed were two copies of mineral lease; that they had no intention of executing a mineral deed, but only a lease, and if they had known that one instrument was a deed they would not have signed same; that it was explained to them they were both instruments relative to lease of their land. When shown a deed form and a lease form upon the witness stand neither plaintiff could distinguish the difference unassisted to a satisfactory degree."

From these findings the court concluded "as a matter of law that a legal fraud was perpetrated upon the plaintiffs in the procuring of the mineral deed made the basis of this action."

Upon request of appellant, the court additionally found: "The Court finds as a fact from the evidence in this cause that there was no active fraud practiced by defendant C. B. Stroud, or by J. S. Slack, in procuring the mineral deed in question from plaintiffs; nor did the said defendant or the said J. S. Slack have any fraudulent intent in the premises; that said deed was executed by mistake on the part of said plaintiff grantors."

The evidence amply supports the court's fact findings with the possible exception of the item to the effect that the Pechaceks were "probably so unversed in the ways of business not to be able to understand them (the lease and mineral deed) if explained in their native language." If by this the court meant to find that if the instruments had been literally translated to them in Bohemian they probably would not have understood their legal import, the finding is probably correct. The evidence is clear, we think, that the Pechaceks knew the condition of their title, that is, that they owned only one-half of the mineral estate; and that they knew the difference between a deed or conveyance of the mineral estate and an oil and gas lease. We interpret the court's above finding as not inconsistent with the evidence in this regard.

Stroud's contention is that the above quoted supplemental finding negatives the existence of actionable fraud and bases the judgment upon a fact finding of mistake on the part of the Pechaceks. If this interpretation of the finding be correct, then the judgment must be reversed for two reasons: (1) the mistake was only on· the part of the Pechaceks, and therefore not mutual; and (2) there was no pleading upon which to predicate a finding of mutual mistake.

■ The same general canons of construction apply to trial court's findings as to those of a jury. These cannons require that such findings be interpreted in the light of the evidence; that they must be considered as a whole and reconciled, where possible; and that, when (so considered) no irreconcilable conflict appears, effect must be given to every finding.

■ The surrounding circumstances were these: Stroud was seeking a lease covering the Pechacek's mineral estate, and a conveyance of a half interest in their royalties under such lease, and of a half interest in their reversionary title to such mineral estate. Slack was his duly authorized agent in the matter. To assist him in obtaining these instruments,

Slack engaged Adamcek, a neighbor of the Pechaceks, and a man of high standing in the community. This assistance, as Slack himself testified, was for the twofold purpose of inspiring confidence in the Pechaceks and interpreting the instruments to them. The court specifically found as a fact that "it was explained to them (the Pechaceks) they were both instruments relative to lease of their land." Specifically who made the explanation is not found; but manifestly it must have been Adamcek, since he alone spoke the Bohemian tongue. We think it clear that Adamcek was the agent of Stroud in making this representation—a subject later discussed—and as such it was, by imputation, the representation of Stroud.

Such representation accompanied by the other found facts, constituted actionable fraud; the essential elements being a false statement of a material fact made to be acted upon and actually believed and acted upon, with consequential injury. In actionable fraud, where exemplary damages are not involved, it is not necessary to inquire into knowledge of the falsity or actual intent to defraud. It is only necessary that the representation be one of fact, that it be false and that the other above elements exist. As stated in Mason v. Peterson, Tex.Com.App., 250 S.W. 142, 146: "Knowledge upon the part of the [vendor] of the falsity of his representations and his fraudulent intent in making them may aggravate the wrong, and might give rise to exemplary damages; but absence of such knowledge and intent cannot relieve him of the consequences of a false representation made by him as an existing fact and calculated to operate and actually operating as an inducement to the contract. Misrepresentations so made will be deemed fraudulent in law; hence the doctrine of constructive or legal fraud as distinguished from a malicious or fraudulent intent in fact." See also 20 Tex.Jur. p. 42, §§ 22 and 23.

The court's original findings are therefore clearly sufficient to support his conclusion of the perpetration of a "legal fraud."

Passing to the supplemental findings it is to be noted that the court makes no reference to its prior findings, and expresses no purpose to recede from anything said therein. The finding that there was no "active fraud" practiced by Stroud or Slack, and that neither of them had any "fraudulent intent in the premises," is entirely consistent with the court's conclusion of a "legal fraud" and its supporting fact findings. Nor is the further supplemental fact finding that the mineral deed was executed by mistake on the part of plaintiffs inconsistent with the existence of actionable fraud. Mistake on the part of the defrauded is always involved, for unless the false representation is believed and acted upon—acted upon, that is, upon the *"mistaken* belief" that it is true—an essential element of actionable fraud is wanting. Actionable fraud is essentially a one sided affair. Mistake, to be actionable, must be mutual, "unless," as stated in Yantis v. Jones, 184 S.W. 572, the mistake of one party is "superinduced by the fraud of the other."

It is further to be noted that the supplemental finding was drawn by Stroud's counsel and approved by the court in the exact wording as so drawn; the approval reciting that it was "hereby adopted and entered by the court as an *additional* finding of fact in this cause" (emphasis supplied). The word "additional" clearly implies that something wanting in the original findings was thereby supplied, added thereto—not subtracted therefrom by modification, contradiction, or otherwise. Both the original and supplemental were to stand, the latter as an addition to the former. The original findings established legal or constructive fraud and were silent as to what the court termed "active" fraud; the supplemental finding supplied this omission by negativing the existence of "active" fraud. It is unimportant that this omission in the original was of a non essential. Stroud requested that the omission be supplied, and the court graciously acceded to his request.

It is proper to add, in view of Adamcek's demise, that the court's findings in no way impugn his motives. The court explains that its finding that the deed was represented to the Pechaceks as a lease, was based upon their testimony to that effect, and the fact that no witness "who could speak the Bohemian language testified that he (Adamcek) explained such instruments to them in the Bohemian language." Adamcek may not have understood the import of the mineral deed. At any rate the court found as a fact that "it was explained they were both instruments relative to lease of their land." It is not necessary to speculate upon the causes for such explanation, nor to assume that it was other than in-

nocently made. The record supplies no motive for intentional deceit on Adamcek's part.

This brings us to the question of Adamcek's agency, noted above. This question has not been briefed by either party; but from our independent investigation we have reached the conclusion that Adamcek was the agent of Stroud, and not the common agent of both parties to the mineral deeds. When two persons unable to speak the same language converse through the medium of an interpreter, the quite generally accepted rule is that, absent special circumstances, the interpreter is the common or joint agent of the parties. In the Massachusetts case of Commonwealth v. Vose, 157 Mass. 393, 32 N.E. 355, 17 L.R. A. 813, the reasons for the rule are thus stated: "When two persons who speak different languages, and who cannot understand each other, converse through an interpreter, they adopt a mode of communication in which they assume that the interpreter is trustworthy, and which makes his language presumptively their own. Each acts upon the theory that the interpretation is correct. Each impliedly agrees that his language may be received through the interpreter. If nothing appears to show that their respective relations to the interpreter differ, they may be said to constitute him their joint agent to do for both that in which they have a joint interest. They wish to communicate with each other, they choose a mode of communication, they enter into conversation, and the words of the interpreter, which are their necessary medium of communication, are adopted by both, and made a part of their conversation as much as those which fall from their own lips. They cannot complain if the language of the interpreter is taken as their own by any one who is interested in the conversation. Interpretation under such circumstances is prima facie to be deemed correct. How far either would be bound by it if the interpreter should prove false may depend on a variety of circumstances which it is unnecessary to discuss."

Other authorities treating upon the subject are: Ross v. Salminen, 1 Cir., 191 F. 504; Kelly v. Ning Yung Benev. Ass'n, 2 Cal.App. 460, 84 P. 321; McCormicks v. Fuller, 56 Iowa 43, 8 N.W. 800; Krajewski v. Western & Southern Life Ins. Co., 241 Mich. 396, 217 N.W. 62; Reichert v. Negaunee State Bank, 1934, 266 Mich. 413, 254 N.W. 149; Wigmore on Evidence, Vol. 1, §§ 668 and 812, Vol. 3, § 1810; 2 C.J. Sec., Agency, § 6, p. 1038, note 77; 10 R.C. L. p. 930, § 95.

The authorities seem to agree that the mere fact that the parties converse through an interpreter does not of necessity make the interpreter their common agent. In Diener v. Schley, 5 Wis. 483, at page 527, it was said: "There is no doubt that the circumstances may be such as to make the interpreter an agent, so as to bind the parties; but we think he is not *necessarily* an agent. The *mere fact* that a person contracts with another, whose language he does not understand, by means of an interpreter, does not constitute the latter an agent, so as to bind him by a false translation of the language of the parties. It would be most dangerous to hold such to be the law, as such a doctrine would hold out great inducements to persons to commit the grossest fraud upon the unwary and unsuspecting."

In the recent case of Gulf C. & S. F. R. Co. v. Giun, Tex.Com.App., 116 S.W.2d 693, 116 A.L.R. 795, the evidence of one of the parties as to what the interpreter said the other party said was held inadmissible as hearsay. The facts in that case were held to exclude the theory of a mutual agreement to converse through an interpreter.

The circumstances of this case, independently of any general rule, clearly constitute Adamcek the agent of Stroud, alone, and not the agent of the Pechaceks. The services of Adamcek were procured by Slack, not alone as a medium of communication, but to inspire confidence in those with whom he expected to deal. As to whether those services were gratuitous the record is silent. If the question were important the obligation rested on Stroud to show the facts; and if he denied the agency he should have objected to the testimony as hearsay. But we do not regard the question as important. He was dealing with farmers touching a matter with which they were not familiar; and anticipating that they would be suspicious of a stranger and reluctant to deal with him, he engaged one of their neighbors, a man of good repute, in order to inspire their confidence and thereby induce their favorable action in his enterprise. These circumstances we hold establish as a matter of law that Adamcek was the agent of Stroud and not the agent of the Pechaceks. If the question were

one of fact, then it is foreclosed by the court's findings and judgment.

■ Upon the issue of limitation: The four years statute applies to an action to cancel a deed on the ground of fraud. Thomason v. McIntyre, 113 Tex. 220, 254 S.W. 315.

■ The limitation period begins when the fraud is actually discovered or should have been discovered by the exercise of that diligence and prudence which, under the circumstances of the case the law imposes. The fraud was not actually discovered until about two years before the trial. The question therefore narrows to whether as a matter of law it should have been discovered earlier, that is more than four years prior to filing the suit, or within about three years after the deed was executed and recorded.

In the case of Steele v. Glenn, Tex.Civ. App., 57 S.W.2d 908, it was held that the cause of action for fraud arises when the fraud is committed but that, on principles of estoppel, running of the statute is suspended until the fraud is or should have been discovered. The holding is quoted in 28 Tex.Jur. p. 155. From a practical standpoint we think it immaterial whether the cause of action accrues upon discovery (actual or imputed) of the fraud; or whether it accrues when the fraud is committed, but defendant is estopped to include in the limitation period the elapsed time prior to such discovery. In dismissing an application for writ of error in the Glenn Case, the Supreme Court said: "We do not believe there is any material confusion or conflict in the decisions of this court relating to when the period of limitation begins to run in fraud actions. The rule is that limitation begins to run from the time of the discovery of the fraud, or from the time it might have been discovered by the use of reasonable diligence. Stated in another form, fraud will prevent the running of the statute of limitations until discovered, or by reasonable diligence might have been discovered. Knowledge of facts that would cause a reasonably prudent person to make inquiry which would lead to a discovery of the fraud is in law a knowledge of the fraud." 61 S.W.2d 810.

The recording of the mineral deed was not constructive notice to the grantors. This exact point was decided in American F. L. M. Co. v. Pace, 23 Tex.Civ.App. 222, 56 S.W. 377. That was a suit to reform a mortgage on the ground that land was im-

properly included therein; the suit being predicated both on fraud and mutual mistake, and limitation being asserted. The court's holding is embodied in the following quotation from Mead v. Bunn, 32 N.Y. 275, 278: "It is neither the purpose nor the office of the recording acts, to charge the immediate parties with constructive notice of the precise contents of the instruments they execute, but to notify subsequent purchasers and incumbrancers of the rights such instruments are intended to secure."

The facts in this case are clearly sufficient to warrant a finding that a reasonable time within which the fraud should have been discovered had not elapsed so as to set the statute in motion four years before the suit was brought. The Pechaceks were ignorant farmers speaking only the Bohemian language; they were not in any way disturbed in their possession of the land; no act under the mineral deed came to their knowledge; and no fact or circumstance was in evidence which would excite suspicion or cause them to inquire whether they had signed an instrument different in import from that represented. The deed did not cover any part of the deferred rentals, and no royalties ever accrued.

The trial court's judgment is affirmed.

Affirmed.