**Opinion issued February 27, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00493-CV

———————————

**EDMOND DEMIRAJ D/B/A ALB PAINTING AND REMODELING,**
**Appellant**

**V.**

**NOE MARTINEZ & JUDY MARTINEZ, Appellees**

---

**On Appeal from County Court at Law No. 2**
**Galveston County, Texas**
**Trial Court Case No. CV-0088626**

---

## MEMORANDUM OPINION

Appellant Edmond Demiraj, doing business as ALB Painting and Remodeling (Demiraj), challenges the trial court's judgment awarding appellees Noe and Judy Martinez actual damages and attorney's fees. In two issues, Demiraj contends that (1) the evidence was legally insufficient to support the award of actual damages and,

(2) without the actual damages award, the Martinezes were not entitled to an award of attorney's fees. Because we conclude that there is some evidence of actual damages, but not enough to support the full amount awarded, we reverse the trial court's judgment and remand for a new trial, unless the Martinezes accept the remittitur we suggest below, in which case we will modify the judgment and affirm as modified.

**Background**

In 2017, Noe and Judy Martinez, who are husband and wife, owned and resided in a 2,486-square foot home in Friendswood, Texas. During Hurricane Harvey, the home flooded, damaging it. The Martinezes' daughter, Elsa Baughman, recommended that her parents hire Demiraj to repair their home. He operated a construction business and had performed satisfactory past work for Baughman.

After he represented that he could complete the necessary construction work, the Martinezes contracted with Demiraj to repair and renovate their home. The parties agreed that the Martinezes would buy the construction materials for the project, and Demiraj would provide the labor. The parties signed three contracts defining the scope of the construction services Demiraj would provide.

The first contract, dated December 27, 2017, provided that, for $43,000, Demiraj would "[i]nstall all new 8 ft sheetrock, insulation tape, float and texture" the walls and ceilings throughout the home and garage. The second contract, dated

February 5, 2018, provided that Demiraj would "[p]rimer and paint the walls, ceilings and garage" for $9,800. The third contract, dated March 2, 2018, provided that Demiraj would perform the following work for $65,000: (1) install tile and a bathtub in the guest bathroom; (2) install shower tile in the master bathroom; (3) install new wood frames around all windows in the home; (4) install laminate flooring throughout "the main section of the home"; (5) install new padding and carpeting in the bedrooms; (6) add tile around the living room fireplace; (7) "[p]rep and paint all new cabinets" in the kitchen, laundry room, and bathrooms; (8) repair the front door to close properly; (9) install "all mirrors, appliances and accessories in the proper areas throughout the home"; and (10) "[t]ouch up paint throughout the home [to make] ready for move in."

Under the contracts, the Martinezes agreed to pay a total of $117,800. Over time, the Martinezes paid Demiraj $112,800 of the $117,800. They also paid Demiraj an additional $7,850 for work he performed outside the scope of the contracts and for materials he purchased. Altogether, the Martinezes paid Demiraj $120,650. Despite being paid this amount, Demiraj asked the Martinezes for additional funds. At that point, the Martinezes were already dissatisfied with the quality of Demiraj's work, and Demiraj had completed only fifty percent of the project. Demiraj told the Martinezes that, if they gave him another $65,000, he could finish the project in ten days. Given his past performance, the Martinezes decided to terminate Demiraj.

A couple of weeks later, the Martinezes contracted with All Star Construction to complete the project, which included repairing Demiraj's defective work. The contract detailed the scope of the work that All Star would perform and reflected that the Martinezes agreed to pay All Star $45,000. The parties agreed that All Star would provide the labor and the Martinezes would provide the construction materials, which ultimately cost them $53,863.77. Altogether, the project's completion, including repairing Demiraj's defective work, cost the Martinezes $98,863.77 ($45,000 + $53,863.77).

In August 2018, the Martinezes' attorney sent Demiraj a demand letter. The letter asserted that Demiraj breached the contracts and misrepresented the amount and quality of work he performed. The letter asked Demiraj to pay the Martinezes the cost they incurred to complete the work, plus their attorney's fees.

In June 2021, the Martinezes sued Demiraj. As in their demand letter, the Martinezes alleged that Demiraj failed to perform the contracts and made misrepresentations about the work he performed at their home. They also alleged that they "expend[ed] ninety-eight thousand eight hundred sixty-three dollars and seventy-seven cents ($98,863.73)[1] to complete the work." They asserted several

---

[1] Although the words in the petition stated "ninety-eight thousand eight hundred sixty-three dollars and *seventy-seven* cents," the parenthetical numerals incorrectly stated $98,863.73. (Emphasis added.) This same mistake also appeared in the Martinezes' demand letter. As discussed below, the evidence at trial showed that the Martinezes paid $98,863.77 to repair and complete the construction work.

4

causes of action, including breach of contract, breach of express and implied warranties, negligence, fraud, and violation of the Deceptive Trade Practices Act (DTPA). The Martinezes sought actual damages as well as exemplary and punitive damages and their attorney's fees. Demiraj answered, generally denying the claims and raising several affirmative defenses.

The trial court conducted a bench trial in March 2023. The Martinezes, Baughman, and Demiraj testified. The contracts between the Martinezes and Demiraj, detailing the scope of the work he agreed to perform, were admitted into evidence. Going through each contract, Noe identified the work Demiraj failed to complete. For example, Demiraj had not installed the sheetrock as agreed in the first contract, had not painted the walls, ceiling, and garage as agreed in the second contract, and had not completed tiling the master bathroom or painting the kitchen cabinets as agreed in the third contract. Noe testified that "every room was started, except the TV room; but it was never completed." He estimated that Demiraj completed around fifty percent of the work listed in the contracts. He also testified that parts of Demiraj's completed work were defective and needed repair. For instance, Demiraj installed laminate flooring incorrectly, requiring fifty percent of it to be replaced.

Noe testified that, with fifty percent of the work remaining, Demiraj presented him with an invoice stating that he needed an additional $65,000 to complete the

work. Demiraj told Noe that, with the additional funds, he would complete the work in ten days. Given Demiraj's past performance, Noe was skeptical that the work would be completed that quickly and terminated him.

Noe stated that they hired All Star in early April 2018. The contract with All Star was admitted into evidence and listed the work that All Star would perform for $45,000. The Martinezes' attorney asked Noe whether $45,000 was a reasonable cost for the work. Demiraj objected, asserting that Noe was not qualified to make a reasonableness determination. The trial court overruled the objection, and Noe testified that it was a reasonable cost because $45,000 was $20,000 less than the $65,000 Demiraj requested to finish the project.

Noe also testified that he purchased the construction materials to complete the project and confirmed that the materials cost $53,863.77. Copies of the receipts for the materials were admitted into evidence. Noe testified that, adding the costs of the labor and materials together, the total cost to complete the project was $98,863.77.

When asked how the litigation affected him personally, Noe testified that "it shattered [their] American dream." Judy Martinez (Judy) also testified how the dispute affected them. She said that they "ended up selling their house" and could not buy a new one because they "lost [their] credit." They were renting a home for more money than their mortgage payments had been on their home. She explained that they were "in [their] 80s when all of this happened" and that Noe blamed himself

for losing their credit. She said that she hears him "crying sometimes." When asked how Demiraj's actions affected her parents, Baughman testified that it was "devastating for them" and they had to attend counseling. She said that it was "very, very emotional" because, "at 85 [years old]," they thought it was their "forever home."

Baughman testified that she visited her parent's home every day when Demiraj began his work and visited three or four times a week as the work progressed. When shown photographs of the interior of the home after Demiraj left the project, Baughman pointed out defects in his work. For example, the bathroom tile was installed incorrectly, the shower floor was cracked, the kitchen cabinets were not sanded, and the cabinet paint was flaking.

Baughman also testified about the cost of completing the work. She said that when Demiraj left the project about fifty to sixty percent of the work was completed. A spreadsheet that Baughman had prepared itemizing the costs of completing the project was admitted into evidence. The spreadsheet showed that the materials cost the Martinezes a total of $53,863.77 and that they paid All Star $45,000. The overall completion cost was $98,863.77. Baughman testified that her parents spoke with "multiple contractors" before hiring All Star. She responded affirmatively when asked whether the $45,000 labor cost charged by All Star was "reasonable" and "in

7

line with" what the other contractors were charging. She agreed that All Star's work was "necessary to complete the original work that was contracted for."

Demiraj denied that he did not complete the construction work and that his work was defective. He testified that, when he received the demand letter, he had completed ninety-nine percent of the work required by the contracts. He claimed that the only work left was cleaning the house. He also denied asking the Martinezes for more money to finish the work. When shown the photographs of the unfinished and defective work inside the home, Demiraj disputed that was the condition of the home when he left the project. Demiraj testified that he had reviewed the All Star contract and agreed that it did not include any upgrades to the work he had agreed to perform.

During closing argument, the Martinezes asserted that they were "seeking actual damages for two components: $45,000 for All Star for [the] cost to complete [the project] [and] $53,863.77 in their actual out-of-pocket costs . . . for a total . . . actual damages [award] of $98,863.77." They did not request any other actual damages. They sought exemplary and punitive damages of $197,727.54, representing twice the amount of the actual damages (i.e., $98,863.77) they sought to complete the work. They also asked for their attorney's fees.

The trial court signed a judgment in the Martinezes' favor awarding them actual damages of $98,863.77 and trial-level attorney's fees of $35,739.50, plus

conditional appellate attorney's fees. The trial court later signed findings of fact and

conclusions of law, which included the following fact findings:

8. [Demiraj] is engaged in the business of providing construction, painting and remodeling services as a contractor.

9. [Demiraj] entered into a contract with [the Martinezes] to provide remediation/renovation ("Work") services for improvements on real property owned by [the Martinezes in Friendswood, Texas].

10. [The Martinezes] paid [Demiraj] a total sum of $120,650.00 for the remediation/renovations on the Property only to be provided with an unfinished home.

11. [The Martinezes] were induced into entering into the contract by [Demiraj's] representations in his ability to complete the Work as per the scope of the contract.

12. [Demiraj] failed to provide the work that he had represented to [the Martinezes] to induce them into the contract.

13. As a result of [Demiraj's] defective, and unfinished Work on the Property[,] the costs to repair the Property total[ed] $98,863.73.

14. [Demiraj] refused to remedy the Work as represented[] by the contract or provide reimbursement to remedy the defective work on the Property.

15. [Demiraj] was acting in his individual capacity as ALB Painting and Remodeling [and it] was not a legal entity registered in the State of Texas.

16. [The Martinezes] are owed, and all conditions precedent have been met for [their] right to recover[] their damages suffered totaling $98,863.77.

17. [The Martinezes] are entitled to recover their attorney's fees in the amount of $35,739.50.

In its conclusions of law, the trial court determined that the Martinezes had proven the elements of three of their causes of action: (1) breach of contract; (2) breach of implied warranty; and (3) violation of the DTPA. The trial court concluded that (1) Demiraj's breach of contract "caused [the Martinezes] damages in the amount of $98,863.73"; (2) "[a]s a result" of Demiraj's breach of implied warranty, the Martinezes "incurred damages in the amount of $98,863.73"; (3) "[a]s a result of [Demiraj's] violation of the [DTPA], [the Martinezes were] entitled to recover actual damages in the judgment amount of $98,863.77"; and (4) the Martinezes were "entitled to recover reasonable and necessary attorney's fees in the amount of $35,739.50."

Demiraj appeals the trial court's judgment, raising two issues.

## Sufficiency of Damages Award

Demiraj first argues that the evidence was legally insufficient to support the award of $98,863.77 in actual damages because the Martinezes failed to offer competent evidence to show that the $98,863.77 in costs they incurred to complete and repair Demiraj's work were reasonable and necessary costs.

### A. Waiver

Before we address Demiraj's sufficiency challenge, we first address the Martinezes' argument that Demiraj waived the challenge because he only challenged the sufficiency of the evidence supporting an award of actual damages based on

10

repair costs. They correctly point out that Demiraj challenges Finding 13 in which the trial court found that, "[a]s a result of [Demiraj's] defective, and unfinished Work on the Property[,] the costs to repair the Property total $98,863.73." The Martinezes assert, "By attacking only findings of fact and conclusions of law that address 'repair costs' but ignoring findings of fact and conclusions of law that were broad enough to encompass mental anguish damages, Demiraj waived his challenges to the Final Judgment and the findings of fact and conclusions of law that support them." To support their assertion, the Martinezes cite Finding 16 in which the trial court found that they "are owed, and all conditions precedent have been met for [their] right to recover[] their damages suffered totaling $98,863.77." The Martinezes point out that, unlike Finding 13, this finding does not mention repair costs. They argue that Finding 16 is broad enough to encompass another type of actual damages: mental anguish damages for which they offered evidence at trial. They also cite the conclusions of law stating that the Martinezes were entitled to damages for each of the three causes of action for which Demiraj was found liable. And they point out that Demiraj did not ask the trial court "to specify the precise nature of the actual damages awarded" by requesting additional or amended findings of fact.

In short, the Martinezes' waiver argument is founded on their assertion that the trial court did not specify the element of damages on which it awarded actual damages to the Martinezes. More precisely, they claim that the trial court did not

11

indicate in its findings that it awarded actual damages based on repair costs. We disagree.

"Findings of fact should be interpreted in their entirety, with effect being given to each finding." *Statewide Hydraulics, Inc. v. EZ Mgmt. GP, LLC*, No. 14-13-01049-CV, 2015 WL 167160, at *7 (Tex. App.—Houston [14th Dist.] Jan. 13, 2015, no pet.) (mem. op.); *see Cooke Cnty. Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.) (construing findings of fact and conclusions of law in their entirety and determining that trial court did not base its judgment on immaterial finding). "The same general canons of construction apply to trial court's findings as to those of a jury." *Stroud v. Pechacek*, 120 S.W.2d 626, 628 (Tex. Civ. App.—Austin 1938, no writ). "These cannons [sic] require that such findings be interpreted in the light of the evidence; that they must be considered as a whole and reconciled, where possible; and that, when (so considered) no irreconcilable conflict appears, effect must be given to every finding." *Id.*; *cf. In re Bain*, 144 S.W.3d 236, 239 (Tex. App.—Tyler 2004, orig. proceeding) ("The same rules of interpretation apply in construing the meaning of a court order or judgment as in ascertaining the meaning of other written instruments."). Applying these principles here shows that the award of actual damages was based on repair costs.

As mentioned, in Finding 16, the trial court found that the Martinezes "are owed, and all conditions precedent have been met for [their] right to recover[] their

12

damages suffered totaling $98,863.77"—the amount of actual damages awarded by the trial court in its judgment. We agree with the Martinezes that, standing alone, Finding 16 does not indicate that the "damages suffered totaling $98,863.77" were based on repair costs, nor do the conclusions of law they cite. But, when read as a whole, the trial court's findings indicate that the award of actual damages was based on repair costs. *See White v. Pottorff*, 479 S.W.3d 409, 418 (Tex. App.—Dallas 2015, pet. denied) (explaining that, while stand-alone finding regarding damages did not indicate whether certain breaches of fiduciary duty caused damages, "reading the findings as a whole" revealed that trial court found that those breaches caused fiduciary-breach damages). In Finding 13, the trial court determined that, "[a]s a result of [Demiraj's] defective, and unfinished Work on the Property[,] the costs to repair the Property total[ed] $98,863.73," which accounts for .9999 percent—essentially 100 percent—of the $98,863.77 in damages that the trial court found the Martinezes suffered in Finding 16 and awarded in the judgment.[2] The evidence at trial, both testimonial and documentary, consistently showed that the Martinezes' paid $98,863.77 to repair and complete the work. The Martinezes were clear in their closing argument that they sought "actual damages for two components: $45,000 for

---

[2]    As discussed in footnote 1, the four cent discrepancy between $98,863.73 and $98,863.77 first appeared as a typo in the Martinezes' demand letter to Demiraj. The typo was carried forward to the litigation, appearing in the Martinezes' petition. The $98,863.73 figure found in Finding 13 (and in two conclusions of law) appears to be a typo intermittently repeated after it first appeared in the demand letter.

All Star for [the] cost to complete [the project] [and] $53,863.77 in their actual out-of-pocket costs . . . for a total . . . actual damages [award] of $98,863.77." They asked for no other actual damages.

We also note that the trial court made no findings indicating that the actual damages were for mental anguish. For instance, to recover mental anguish damages under the DTPA, the Martinezes were required to prove that Demiraj knowingly or intentionally committed a DTPA violation, *see* TEX. BUS. & COM. CODE § 17.50(b)(1), but the trial court did not make such findings.

In addition, "mental anguish damages generally are not available for breach of a contract." *Soukup v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 01-11-00871-CV, 2012 WL 3134223, at *7 (Tex. App.—Houston [1st Dist.] Aug. 2, 2012, pet. dism'd) (mem. op.). Mental anguish may be "compensable as the foreseeable result of a breach of duty arising out of certain special relationships," such as "the physician-patient relationship" or "a very limited number of contracts dealing with intensely emotional *noncommercial* subjects such as preparing a corpse for burial." *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997) (emphasis added). A construction contract would not fall within this narrow category. *Cf. Soukup*, 2012 WL 3134223, at *7 (concluding that mental anguish damages not recoverable for breach of employment contract). And the trial court made no findings of a "special relationship" between the Martinezes and Demiraj. *See Likes*, 962 S.W.3d at 496.

14

Applying the rules of construction, we conclude that the findings show that the $98,863.77 in actual damages awarded to the Martinezes were based on repair costs. *See White*, 479 S.W.3d at 418; *Stroud*, 120 S.W.2d at 628–29. This conclusion necessarily leads to an additional conclusion: Demiraj did not waive his challenge to the legal sufficiency of the evidence supporting the award of actual damages based on repair costs.

## B.     Standard of Review: Legal Sufficiency

A trial court's findings of fact issued after a bench trial have the same weight, and are judged by the same appellate standards, as a jury verdict. *Tex. Outfitters Ltd., LLC v. Nicholson*, 572 S.W.3d 647, 653 (Tex. 2019). In a legal-sufficiency review, we must consider all the evidence "in the light most favorable to the party in whose favor the verdict has been rendered," and "every reasonable inference deducible from the evidence is to be indulged in that party's favor." *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (internal quotation marks omitted). A legal sufficiency challenge fails if more than a scintilla of evidence supports the finding. *Tex. Outfitters Ltd.*, 572 S.W.3d at 653. More than a scintilla of evidence exists when reasonable and fair-minded individuals could differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

## C. Applicable Legal Principles

A party seeking to recover costs of repair or completion must prove that the damages sought are reasonable and necessary.[3] *See McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) (repair costs in breach-of-contract case); *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 200 (Tex. 2004) (completion costs in breach-of-contract case); *Perry Homes v. Alwattari*, 33 S.W.3d 376, 385 (Tex. App.—Fort Worth 2000, pet. denied) (repair costs in DTPA case); *Von Illyes v. Rolfing*, No. 07-22-00129-CV, 2023 WL 2666115, at *4 (Tex. App.—Amarillo Mar. 28, 2023, no pet.) (mem. op.) (repair costs in breach-of-implied-warranty case). Satisfying this requirement entails showing more than simply "the nature of the injuries, the character and need for the services rendered, and the amounts charged therefor." *McGinty*, 372 S.W.3d at 627 (quoting *Dall. Ry. & Terminal Co. v. Gossett*, 294 S.W.2d 377, 383 (Tex. 1956)). "Evidence of the amounts charged and paid, standing alone, is no evidence that such payment was reasonable and necessary." *Mustang Pipeline*, 134 S.W.3d at 200–01; *see McGinty*, 372 S.W.3d at 627–28.

---

[3]     Demiraj also cites the Residential Construction Liability Act (RCLA) for the proposition that it limits the recovery of repair costs to "the reasonable costs . . . necessary to cure the construction defect." *See* TEX. PROP. CODE § 27.004(g)(1). In the trial court, Demiraj made additional arguments asserting that the RCLA limited the Martinezes' recovery, but he does not assert those arguments on appeal.

**D. Analysis**

The $98,863.77 in repair costs that the Martinezes sought to recover had two components: (1) cost of labor, namely, the $45,000 they paid to All Star to perform the construction work and (2) cost of materials, that is, the $53,863.77 they paid for construction materials. We address whether the evidence was legally sufficient to show that these two components were reasonable and necessary costs.

**1. *$45,000 Paid to All Star***

The Martinezes offered evidence showing that they paid All Star $45,000 to complete and repair the work on their home. Demiraj acknowledges that Noe and Baughman each testified that $45,000 was a reasonable amount for the services performed by All Star but asserts that their opinion testimony was not competent evidence. To support his assertion, Demiraj cites Rule of Evidence 701, claiming that neither witness was qualified to offer his or her lay opinion about reasonableness under that rule. Rule 701 provides: "If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness' perception and (b) helpful to clearly understanding the witness' testimony or to determining a fact in issue." TEX. R. EVID. 701.

Over Demiraj's objection, Noe testified that the $45,000 paid to All Star was a reasonable amount for the work provided. On appeal, Demiraj characterizes Noe's testimony as "conclusory." He asserts that Noe "did not provide any evidence of

17

how he made the calculation" and "did not provide any perception to inform the veracity of his own statement." But Demiraj's assertion does not recognize that Noe stated the basis for his opinion. Noe testified that Demiraj asked him for an additional $65,000 to finish the work. Noe explained that $45,000 was a reasonable amount for the work performed by All Star because it was "$20,000 cheaper than what [Demiraj] wanted to charge [him]" to complete the job.

Demiraj also asserts that Baughman's opinion testimony was "conclusory" and "speculative." Baughman testified, without objection, that $45,000 was a reasonable amount. As support for her opinion, she testified that her parents "talk[ed] to multiple contractors" besides All Star and that $45,000 was "in line with"—that is, consistent with—what the other contractors were charging.

To recover repair costs, a party must prove their reasonable value. *See Hernandez v. Lautensack*, 201 S.W.3d 771, 776 (Tex. App.—Fort Worth 2006, pet. denied). "The plaintiff need not use magic words such as 'reasonable' or 'necessary,' but is only required to present sufficient evidence to support a finding that . . . the costs were reasonable and the repairs were necessary." *CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 200 (Tex. App.—Houston [1st Dist.] 2014, no pet.). Thus, regardless of whether the opinion testimony of Noe and Baughman was competent evidence, if the record contains more than a scintilla of other evidence

showing that $45,000 was a reasonable amount, then the evidence is legally sufficient to support a determination that $45,000 was reasonable.

As discussed, Noe testified that Demiraj requested $65,000 to finish the project. At the time, fifty percent of the work was unfinished and some of the completed work needed repair. The evidence reflected that All Star charged $45,000 to complete the unfinished work *and* repair Demiraj's defective work. The evidence also showed that Demiraj charged the Martinezes $117,800 for the whole project. Fifty percent of that amount is $58,900, nearly $14,000 more than the $45,000 that the Martinezes paid All Star to complete and repair the work. In addition, Baughman's testimony indicated that $45,000 was consistent with what "multiple" other contractors contacted by her parents would charge for the work. Taken together, the Martinezes' evidence amounted to more than a scintilla of evidence that the $45,000 paid to All Star was a reasonable cost. *See AdvanTech Constr. Sys., LLC v. Michalson Builders, Inc.*, No. 14-21-00159-CV, 2023 WL 370513, at *12 (Tex. App.—Houston [14th Dist.] Jan. 24, 2023, no pet.) (mem. op.) (concluding that "a rational factfinder could have concluded that the completion costs were reasonable and necessary" where evidence showed that cost of completing construction project was less than half of original cost of project); *Hernandez*, 201 S.W.3d at 777 (holding that evidence was legally sufficient to support actual damages awarded "as the reasonable cost of replacing" roof installed by appellant

when replacement cost was compared to amount appellant originally charged to install roof, amount appellant proposed to replace defective roof, and amount that another roofer proposed to repair roof).

The Martinezes also offered more than a scintilla of evidence showing that the $45,000 paid to All Star was a necessary expense. As discussed, the evidence showed that fifty percent of the work was unfinished when All Star was hired. Noe identified the specific contracted-for work that Demiraj did not complete. Noe and Baughman also described why Demiraj's work required repair, and photographs showed the defective and incomplete work. And the work listed in the All Star contract was consistent with the work that Noe and Baughman testified needed completion or repair. Demiraj also testified that he reviewed the All Star contract and acknowledged that it did not include any upgrades to the work that he had agreed to perform. Considering the evidence under the applicable standard of review, we conclude that the evidence was legally sufficient to show that the $45,000 paid to All Star was a reasonable and necessary cost. *See AdvanTech Constr. Sys.*, 2023 WL 370513, at \*12; *Hernandez*, 201 S.W.3d at 777.

### 2. *$53,863.77 Paid for Construction Materials*

The Martinezes offered evidence showing that they spent $53,863.77 for construction materials to complete the project. Noe testified that they paid that amount, and the Martinezes offered copies of the receipts into evidence. But proof

that the Martinezes incurred these costs, by itself, is legally insufficient to show that the costs were reasonable. *See McGinty*, 372 S.W.3d at 627–28; *Mustang Pipeline*, 134 S.W.3d at 200–01. While evidence of Demiraj's incomplete and defective work may have shown the necessity of purchasing the materials, the Martinezes offered no proof of the reasonableness of the amount.

Without more, we conclude that the evidence was legally insufficient to show that the $53,863.77 paid by the Martinezes for construction materials was reasonable and necessary. Applying the applicable standard of review, the evidence was legally insufficient to support the full award of $98,863.77 in actual damages.

Because we conclude that the Martinezes presented legally sufficient evidence of a portion of the actual damages award, but legally insufficient evidence of the total award, we overrule in part and sustain in part the portions of Demiraj's issues challenging sufficiency of the evidence to support the damages award.

**Attorney's Fees**

Demiraj contends that, because the damages award must be reversed, the attorney's fee award of $35,739.50 must also be reversed. We agree.

The trial court found Demiraj liable based on three causes of action: breach of contract, breach of implied warranty, and violation of the DTPA. Under each of these causes of action, only a prevailing party may recover attorney's fees. *See Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 823 (Tex. 2012) (discussing recovering

21

attorney's fees under DTPA); *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (examining when attorney's fees may be recovered under Civil Practice and Remedies Code section 38.001(8) for breach of contract); *Howard Indus., Inc. v. Crown Cork & Seal Co., LLC*, 403 S.W.3d 347, 353 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (concluding that prevailing party could recover attorney's fees under section 38.001(8) for breach of implied warranty when claim sounds in contract). Without the recovery of damages, the Martinezes are not prevailing parties and may not recover attorney's fees. *See Cruz*, 364 S.W.3d at 823; *Green Intern*, 951 S.W.2d at 390; *Howard Indus.*, 403 S.W.3d at 351–52.

We also sustain the parts of Demiraj's issues challenging attorney's fees.[4]

## Conclusion

Ordinarily, we render judgment when we sustain a no-evidence issue. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.*, 299 S.W.3d 106, 124 (Tex. 2009). However, an appellate court may suggest a remittitur when an appellant complains that there is insufficient evidence to support an award and the appellate court agrees, but there is sufficient evidence to support a lesser

---

[4] As discussed below, if the Martinezes accept the remittitur of actual damages suggested by the Court, then the trial court's judgment will be modified to reflect the remittitur, and the remaining portions of the judgment, including the $35,739.50 attorney's fees award, will be affirmed. *See* TEX. R. APP. P. 46.3.

award. *See* TEX. R. APP. P. 46.3; *Akin, Gump, Strauss, Hauer & Feld*, 299 S.W.3d at 124.

Here, the evidence is not sufficient to support the trial court's full award of $98,863.77 in actual damages, but it is sufficient to support part of that award: the $45,000 paid to All Star. Accordingly, we suggest to the Martinezes a remittitur of $53,863.77. If the Martinezes file such remittitur in this Court within fifteen days after the issuance of this opinion, we will modify the trial court's judgment to award the Martinezes $45,000 in actual damages and affirm the judgment as modified; otherwise, the trial court's judgment will be reversed and the case remanded for a new trial as to liability and damages. *See* TEX. R. APP. P. 46.3; *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 877–78, 880 (Tex. 2010); *see also* TEX. R. APP. P. 44.1(b) (providing that appellate court "may not order a separate trial solely on unliquidated damages if liability is contested"); *Rancho La Valencia, Inc. v. Aquaplex, Inc.*, 383 S.W.3d 150, 152 (Tex. 2012) (applying Rule 44.1(b)).


Kristin Guiney
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.